Norman Darnell BAXTER,
Petitioner–Appellant,

v.

Albert G. THOMAS, Warden, Georgia
Diagnostic and Classification Center,
Respondent–Appellee.

No. 92–9200.

United States Court of Appeals,
Eleventh Circuit.

Feb. 9, 1995.

Lynne H. Rambo, Arnall Golden & Gregory, Atlanta, GA, for appellant.

Susan V. Boleyn, Sr. Asst. Atty. Gen., Atlanta, GA, for appellee.

Before KRAVITCH, BIRCH and DUBINA, Circuit Judges.

KRAVITCH, Circuit Judge:

Petitioner, Norman Darnell Baxter, was convicted of the murder of Katherine June Moore and sentenced to death. He appeals from the district court's order denying his motion for a writ of habeas corpus. For the reasons set forth below, we AFFIRM the district court's denial of relief as to Baxter's conviction. Because, however, we hold that Baxter's counsel was ineffective at the sentencing phase of his trial, we REVERSE the district court's denial of relief as to Baxter's sentence.

## I.

On July 5, 1980, Katherine June Moore attended a cookout at her father and stepmother's home. She left at approximately 11:00 p.m., telling her family that she was going to see Don Bussey, her ex-boyfriend. At the time, Moore was living with her friend Jane Bozeman at the Safari Inn Motel, located outside of Atlanta. Moore and her parents arranged to meet the next day at the Safari Inn in order to use the swimming pool. When Moore failed to meet them as planned, her parents became concerned. They reported her missing on July 7, 1980.

On July 13, 1980, Moore's body was found in a wooded area west of the Safari Inn. She had been strangled; her hands and feet bound. Moore's partially stripped car was found on October 14, 1980.

At the time of Moore's disappearance, Baxter was staying at the Safari Inn with his girlfriend, Kathy Walker Anderson ("Anderson").[1] After investigating several suspects, including Bussey, the police arrested Baxter for Moore's murder. He was brought to trial in 1983.

The evidence presented by the state at trial was circumstantial, as there was no direct or physical evidence linking Baxter to Moore's murder. Marvin Moore and Opal Moore, the victim's father and stepmother, testified that Moore had left their house around 11:00 p.m. on July 5, 1980, in order to meet Bussey. They also testified that she had the following items with her that night: an "engagement-type ring," a .22 caliber pistol, a red dress, and a hair curlers' case. The police did not find these items in Moore's car or on her person.

Anderson testified that she and Baxter returned to their room at the Safari Inn between midnight and 3:00 a.m. and that as she went to the shower, Baxter said to her that he "saw a money making thing in the parking lot." After taking her car keys, Baxter left the motel room.

---

1. Anderson and Baxter later married. At the time of Baxter's trial, however, they were divorced and Anderson had remarried.

According to Anderson, after Baxter left the room, she unsuccessfully looked for him several times in the parking lot. She was concerned about her car and noticed that it was still in the parking lot. Anderson testified that when Baxter returned at dawn, he was "real dirty. He was sandy. And he smelled very bad." He also had a .22 caliber gun, bullets, a scarf, a diamond ring, a red shirt, and an electric curlers' container in his possession—items that he did not have when he left the room.

Anderson testified that she and Baxter left the motel shortly after Baxter's return. Baxter retained possession of the ring and put the rest of the items in the console of Anderson's car. Following a fight a few days later, Anderson left Baxter at a restaurant. She then threw the items that Baxter had placed in her car into a dumpster. These items were never recovered. The state introduced a pawn ticket dated August 10, 1980, indicating that Baxter had pawned a "white gold ring."

Three witnesses [2] testified that Baxter had taken them to a car located near the Safari Inn in order to remove parts and that the car matched a police photograph of Moore's car.

Finally, the testimony showed that while Baxter was incarcerated later on unrelated charges, he told fellow inmates of his involvement with Moore's murder: James Green testified that Baxter told him that he had strangled a girl at a motel outside Atlanta; Eugene Gadson testified that Baxter told him that he had choked a girl in Northern Georgia; and Timothy McWilliams testified that Baxter told him that he had choked a girl in order to steal her mayonnaise jar full of cocaine and that he bought Anderson a white Cadillac with the money.[3]

The thrust of Baxter's defense was that someone other than Baxter killed Moore.

The defense focused on Phillip Kennedy, the owner of a local gasoline station, and Bussey, Moore's ex-boyfriend. Jane Bozeman, the friend with whom Moore had been staying at the time of her murder, testified that Kennedy had told her shortly after Moore's disappearance that he had murdered someone. A detective for Henry County testified that a warrant had been issued for Kennedy in connection with Moore's murder, but that following a commitment hearing, the case against Kennedy was dismissed.

In order to implicate Bussey, the defense pointed out that Moore had told her parents that she was going to meet Bussey and that witnesses placed Bussey with Moore at approximately 11:00 p.m. on July 5, 1980, thus making him the last person to see Moore alive.[4] Additionally, Bussey was involved with another woman—Julie Cream. The defense introduced testimony concerning physical altercations between Moore and Cream, as well as heated fights between Bussey and Moore.

The jury found Baxter guilty of murder. At the sentencing phase of the trial, the judge instructed the jury on two aggravating circumstances: (1) that the murder "was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim"[5] and (2) that the murder was committed "for the purpose of receiving money or any other thing of monetary value."[6] The state presented no new evidence at sentencing. The defense called only one witness, a preacher who testified that based upon conversations with Baxter and his review of a report detailing Baxter's life, Baxter had a difficult upbringing, was physically abused, and was passed along "[f]rom one home, orphanage or school of some sort." The preacher also testified that he was opposed

**2.** The three witnesses were: Ruben Baxter (Baxter's brother), Grady Gene Couch (Baxter's friend), and Thomas Edward Singley (Baxter's brother-in-law's brother).

**3.** In his closing argument, the prosecutor argued that McWilliams had accurately related the story that Baxter had told him, but that Baxter had lied to McWilliams about the cocaine because Baxter "was trying to make McWilliams think he

was the baddest of the bad [and] [t]he baddest of the bad don't kill without a reason."

**4.** Bussey denied being with Moore on the night of July 5 and testified at the trial that he last saw Moore on July 4, 1980.

**5.** O.C.G.A. § 17–10–30(b)(7).

**6.** O.C.G.A. § 17–10–30(b)(4).

to the death penalty. The jury found both aggravating circumstances and sentenced Baxter to death.

On direct appeal, Baxter's conviction and sentence were affirmed. *Baxter v. State,* 254 Ga. 538, 331 S.E.2d 561 (1985).[7] The Supreme Court denied Baxter's petition for certiorari. *Baxter v. Georgia,* 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 275 (1985). Baxter then filed a petition for a writ of habeas corpus in Georgia court, which writ was denied following an evidentiary hearing. The Georgia Supreme Court affirmed the denial of the writ. *Baxter v. Kemp,* 260 Ga. 184, 391 S.E.2d 754 (1990). Baxter filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia, pursuant to 28 U.S.C. § 2254 (1988), challenging his conviction and death sentence. The district court denied relief without holding an evidentiary hearing and this appeal follows.

## II.

Baxter enumerates various errors at his trial which he contends merit reversal of his conviction. Because we find these contentions to be without merit, we AFFIRM the district court's denial of relief as to Baxter's conviction.

## A.

Baxter first alleges that the prosecutor withheld exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He asserts that the prosecutor withheld the following: (1) statements that Anderson previously had given to police that could have been used to impeach Anderson; (2) statements given by Opal Moore, the victim's stepmother, and Kathryn Moore, the victim's natural mother, indicating that Bussey was violent; (3) evi-

dence that McWilliams had testified in order to garner early release from prison;[8] and (4) a 1972 Bulloch County order from a prior criminal case in which Baxter was found temporarily incompetent to stand trial.[9]

To establish a *Brady* violation, Baxter must prove:

(1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Spagnoulo,* 960 F.2d 990, 994 (11th Cir.1992) (citations omitted). Baxter cannot meet this burden for any of the material which he alleges to have been withheld in violation of *Brady.*

■ Anderson gave four interviews to the police. During the first interview, Anderson stated that she did not remember the events of the July 4, 1980 weekend; she did recall, however, that she had gone to the Safari Inn in order to hide from Baxter, but that he found her at the motel. In subsequent interviews, Anderson was able to recall more and more details of that weekend. Baxter contends that the differences among these statements would have enabled defense counsel to impeach Anderson's credibility. We disagree. After reviewing the four statements which Anderson gave to the police prior to her testimony, we conclude that even assuming that Baxter can prove the first three elements necessary to show a *Brady* violation,[10] Baxter cannot show that there is a

---

7. The Georgia Supreme Court disregarded the jury's finding of aggravation under O.C.G.A. § 17–10–30(b)(7) because the trial judge erroneously instructed the jury that "a finding of strangulation alone would authorize a finding of aggravation under (b)(7)." *Baxter,* 331 S.E.2d at 572. This finding had no impact upon Baxter's death sentence, however, because the court upheld the "monetary gain" aggravating circumstance. *See id.*

8. Baxter's counsel, Arch McGarity, submitted an affidavit stating that McWilliams had told him

that he had lied on the stand in exchange for early release. McGarity's affidavit also stated that McWilliams was unwilling to sign an affidavit or testify to that effect.

9. In May 1972, Baxter was adjudged temporarily incompetent to stand trial. In August 1972, following evaluation, he returned to court and pleaded guilty to the pending charges.

10. It is unlikely that Anderson's prior statements were exculpatory, because although each state-

reasonable probability that had these statements been disclosed to the defense, the outcome of his trial would have been different. Defense counsel vigorously cross-examined Anderson, commenting on her ability to remember certain things and not others.[11] Further, defense counsel cross-examined Detective Bobby Hill, who conducted the first two interviews with Anderson and was present for the third interview. Hill admitted that Anderson had not told him about the bullets in the first two interviews and that Anderson had never mentioned a ring.[12] Because defense counsel were aware of the prior statements and brought out differences in Anderson's interviews, the written transcripts only would have provided cumulative impeachment evidence. *See Routly v. Singletary,* 33 F.3d 1279, 1285–86 (11th Cir.1994) (no *Brady* violation when defense counsel was aware of witness's grant of immunity and cross-examined her regarding that immunity; evidence would have provided, "at most, cumulative impeachment of [witness's] testimony.").

■ There was no *Brady* violation with respect to Opal Moore's statement, because the statement was not exculpatory. Opal specifically stated, "I know of no physical abuse. I never saw any bruises on June [the victim]. June has on occasion pulled her pistol and pointed it at Don [Bussey], and threatened him."

■ With respect to Kathryn Moore's statement that Bussey was violent, defense counsel were aware of the tumultuous rela-

tionship between Moore and Bussey.[13] Moore's father and Bozeman both testified about Bussey's heated relationship with Moore. Further, Bussey testified as a witness for the defense and therefore was available to answer any questions concerning his relationship with Moore. Baxter cannot show a reasonable probability that Kathryn Moore's statement would have changed the outcome of the proceeding, and there is therefore no *Brady* violation.

■ The Bulloch County order was evidence that Baxter himself possessed or could have obtained with reasonable diligence, as the prosecution made its computer available to the defense, and Baxter himself was aware of the order. Thus, there is no *Brady* violation. *See United States v. Davis,* 787 F.2d 1501, 1505 (11th Cir.) (*"Brady* rule does not apply if the evidence in question is available to the defendant from other sources"), *cert. denied,* 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986).

■ Finally, with respect to evidence that Baxter contends shows that McWilliams made a deal in exchange for his testimony, McWilliams, as well as the Assistant District Attorney and a law enforcement agent from Henry County, all testified, under oath, that no deal had been made. Apart from defense counsel's affidavit, admitting that McWilliams was unwilling to recant his testimony, there is nothing to suggest that a deal had been made and, consequently, there is no *Brady* violation.[14]

---

ment was more detailed than the one before, the statements were neither inconsistent with each other nor inconsistent with Anderson's trial testimony.

11. Defense counsel stated at one point, "Ms. Anderson, I'm puzzled and perhaps you can explain to the jury how you distinctly remember certain events on that weekend and then you just don't recall any of the events on some of the days of that weekend."

Additionally, the following exchange took place during Anderson's cross-examination:
Q You can't remember a lot of things that happened three years ago, can you?
A Not everything, no.
Q Just certain things?
A Yes, sir.
Q Have you ever heard of the expression, "selective memory?"

12. In fact, a review of the transcript of the third interview reveals that Anderson had mentioned the ring during this interview.

13. When questioning Moore's father, defense counsel asked Mr. Moore why he wanted his daughter to stop seeing Bussey. Counsel stated, "I think it's very relevant, Your Honor. There's got to be a reason for Mr. Moore not wanting Mr. Bussey to see his daughter, ... whether he's a violent person or—"

14. We also reject Baxter's suggestion that the district court erred in not holding an evidentiary hearing to determine whether McWilliams made a deal. Baxter "bears the burden of alleging facts sufficient to warrant an evidentiary hearing," *Raulerson v. Wainwright,* 732 F.2d 803, 813 (11th Cir.), *cert. denied,* 469 U.S. 966, 105 S.Ct.

## B.

■■■ Baxter also asserts that the prosecutor commented upon his right to remain silent in violation of the Fifth Amendment.[15] During closing argument, the prosecutor stated: "Now ladies and gentlemen of the jury, this case would have been a lot more complete if we had one more witness and that witness would have been sitting right here. But, for the defendant, Norman Darnell Baxter, this case is in the posture that it is. And I don't say that as if there's not enough evidence to convict this defendant...."

A prosecutor's statement violates a defendant's Fifth Amendment right to remain silent if the defendant can establish that the statement "was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Garcia,* 13 F.3d 1464, 1474 (11th Cir.) (quoting *United States v. Swindall,* 971 F.2d 1531, 1551 (11th Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994)), *cert. denied,* — U.S. —, 114 S.Ct. 2723, 129 L.Ed.2d 847 (1994).

To determine whether the prosecutor intended to comment on Baxter's failure to testify, we "must examine the comment in context." *Kennedy v. Dugger,* 933 F.2d 905, 915 (11th Cir.1991) (quotation omitted), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 957, 117 L.Ed.2d 124 (1992). After reviewing the prosecutor's closing argument in context, we conclude that the prosecutor did not intend to comment on Baxter's failure to testify, but was merely describing the circumstantial nature of the case. *See Swindall,* 971 F.2d at 1551–52 (no manifest intent to comment on defendant's silence when there is an equally plausible explanation for remark).

Further, given that the jury was likely to conclude that the witness who could not testify was Katherine June Moore, not Baxter, the jury would not necessarily have interpreted the prosecutor's remark as a comment on Baxter's failure to testify. *Id.* at 1552 ("The question is not whether the jury possibly or even probably would view the remark [as a comment on defendant's silence] but whether the jury *necessarily* would have done so") (emphasis in original) (quoting *United States v. Carter,* 760 F.2d 1568, 1578 (11th Cir.1985)). We thus conclude that the prosecutor's closing argument did not violate Baxter's Fifth Amendment right to remain silent.[16]

## C.

■■■ Baxter argues that the judge's instructions to the jury denied him a fair trial

---

366, 83 L.Ed.2d 302 (1984), and he has failed to meet this burden. All of the relevant parties testified under oath that no deal had been made; moreover McWilliams was unwilling to recant his testimony. Under these circumstances, and in light of the fact that Baxter had ample opportunity to present evidence at the state habeas hearing, we cannot say that the district court was required to hold an evidentiary hearing.

15. Baxter's other objections to the prosecutor's closing argument are unavailing. Baxter claims that the prosecutor misstated the law, impermissibly expressed his personal opinion and invoked his expertise, and appealed to the jury's passions and prejudices. We review the record in its entirety to determine if the statements were improper, and if so, whether they rendered Baxter's trial fundamentally unfair. *See Brooks v. Kemp,* 762 F.2d 1383, 1400 (11th Cir.1985) (en banc) ("[I]t is not our duty to ask whether a particular remark was unfair; we are concerned with whether it rendered the entire trial unfair."), *vacated,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *and reinstated on remand,* 809 F.2d 700 (11th Cir.) (en banc) (per curiam), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97

L.Ed.2d 744 (1987). A prosecutor's argument renders a trial unfair if "there is a reasonable probability that [the remarks] changed [the] outcome of the case." *Id.* at 1402. After reviewing the record, we are convinced, even assuming that the prosecutor made isolated improper remarks, that Baxter cannot show that the remarks rendered his trial fundamentally unfair.

For the reasons set forth in the next section, we reject Baxter's argument that the prosecutor unconstitutionally shifted the burden of proof.

16. Additionally, the prosecutor stated:

Now, let's move on to some more witnesses. Well, let's move on to a witness that didn't say anything. There was one of those. Y'all don't look at me like I don't know what I'm talking about. State's Exhibit #29 is a pawn ticket. It unequivocally has Norman Baxter's name on it.

At this juncture, the jury likely would conclude that the prosecutor was referring to the pawn ticket as a "witness." He neither intended the comment as a reference to Baxter's failure to testify nor would the jury necessarily have interpreted it as such.

because the instructions shifted the burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[17] The judge instructed the jury:

> If you find that the crime in this indictment as charged has been committed and certain personal property was stolen and if recently thereafter the defendant was found in possession of such stolen property or any part thereof, that would be a circumstance along with the other evidence in the case from which the jury may infer the guilt of the defendant of the theft and of the charge made in this indictment if you find that there is a connection and if you should see fit to do do [sic], unless of course, the defendant has made an explanation of his possession, if any, consistent with his plea of not guilty. This is a fact for you, the jury, to determine.

The threshold inquiry in evaluating whether a jury instruction impermissibly shifts the burden of proof is whether the instruction is a permissive inference or a mandatory presumption. *Francis v. Franklin*, 471 U.S. 307, 313–14, 105 S.Ct. 1965, 1970–71, 85 L.Ed.2d 344 (1985). "A permissive presumption merely allows an inference to be drawn and is constitutional so long as the inference would not be irrational." *Yates v. Evatt*, 500 U.S. 391, 402 n. 7, 111 S.Ct. 1884, 1892 n. 7, 114 L.Ed.2d 432 (1991).

The judge instructed the jury that it "may infer" that if Baxter possessed Moore's property, he also killed her. This is a permissive inference. *See United States ·v. Myers*, 972 F.2d 1566, 1573 (11th Cir.1992) (judge's instruction using words "may infer" is permissive inference), *cert. denied*, —

U.S. ——, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993). Because we cannot say that this permissive inference is irrational, we hold that the judge did not impermissibly shift the burden of proof.

### D.

Baxter also contends that he was denied a fair trial because of certain evidentiary rulings. Because a federal habeas corpus case is not a vehicle to correct evidentiary rulings, we "inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial." *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir.) (quotation omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "[H]abeas relief will only be granted if the state trial error was material as regards a critical, highly significant factor." *Id.*

Neither the exclusion nor the admission of the evidence of which Baxter complains rendered his trial fundamentally unfair. Baxter complains that the judge erred in allowing a photograph of Moore's body into evidence. "The introduction of graphic photographic evidence rarely renders a proceeding fundamentally unfair." *Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) (collecting cases). The photograph of Moore's body was relevant evidence and the judge gave a cautioning instruction.[18] Thus, there was no error.

Further, none of the other evidence that was admitted or excluded is "material as regards to a critical, highly significant factor." *Alderman*, 22 F.3d at 1555. Baxter

---

17. Baxter objects to two other portions of the jury instructions: the reasonable doubt instruction and the judge's instruction that witnesses are presumed to tell the truth. These objections are without merit.

 The reasonable doubt instruction, when read in its entirety, is constitutionally sound. *See Johnson v. Kemp*, 759 F.2d 1503, 1508 (11th Cir.1985) (instruction using "reasonable doubt" throughout, but also stating that jury should acquit if their minds were "wavering, unsettled or unsatisfied" was not constitutionally infirm).

 The instruction that witnesses are presumed to tell the truth is also constitutionally sound because where, as here, the judge tells the jury how that presumption may be overcome, instructs the

jury that a defendant is presumed innocent, and instructs the jury that the state must prove its case beyond a reasonable doubt, there is no Due Process violation. *See Cupp v. Naughten*, 414 U.S. 141, 149–50, 94 S.Ct. 396, 401–02, 38 L.Ed.2d 368 (1973).

18. The judge instructed the jury that:
 Certain photos were admitted for the purpose of showing the injuries which were inflicted upon the victim as part of the offense charged and to show the manner in which the victim was bound. And anything in the photographs that appear not to illustrate any issue in this case should not inflame you or cause prejudice against the defendant.

asserts that the court erred in excluding Anderson's testimony concerning her purchase of a car, as it would tend to impeach McWilliams's testimony that Baxter told him that he stole a jar of cocaine from Moore and bought Anderson a Cadillac with the proceeds. The prosecutor conceded, however, that Baxter fabricated the portion of his confession concerning the jar of cocaine,[19] so this evidence was not material.

■ Baxter's contention that the court erred in excluding the prison guard's testimony concerning the days during which Baxter and McWilliams were in the yard together is meritless because such testimony would merely establish when the confession took place and not whether Baxter actually confessed.[20]

■ Finally, we reject Baxter's complaint that the court erred in allowing Debbie Moore, the victim's sister-in-law, to identify Baxter as the man she had seen flirting with Katherine Moore at the motel because that identification was based upon an unduly suggestive photo line up. The identification was not material as it was undisputed that Baxter was staying at the motel at the time Moore disappeared.

We therefore hold that Baxter was not denied a fundamentally fair trial because of the state trial court's evidentiary rulings.

### E.

■ Baxter contends that the testimony of James Green, a fellow inmate, should have been suppressed under *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). This contention is without merit. To prove a Sixth Amendment violation in a jailhouse informant case, Baxter must show that Green was a government agent and that Green "deliberately elicited incriminating statements" from Baxter.

*Lightbourne v. Dugger*, 829 F.2d 1012, 1020 (11th Cir.1987), *cert. denied*, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988). Green specifically testified that he was not "the agent of any law enforcement officer or agency," and that he did not question Baxter, but rather that Baxter "more or less volunteered" the information concerning Moore's murder. Baxter has therefore failed to show a *Massiah* violation.

Additionally, Baxter asserts that evidence derived from statements which he gave to police while in custody on an unrelated charge should have been suppressed because the statements were taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[21] Following a hearing, the trial court denied Baxter's motion to suppress these statements.

The protections of *Miranda* apply to custodial interrogations, defined by the Supreme Court as "questioning initiated by law enforcement officers after a person has been taken into custody...." *Illinois v. Perkins*, 496 U.S. 292, 296, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990) (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612).

■ A review of the transcript of the hearing on Baxter's motion to suppress reveals that the questioning in this case was not initiated by law enforcement officers. Rather, Baxter "had said that he knew something about the Katherine June Moore murder and wanted to talk to some ... officers about it." The officers, therefore, were not required to read Baxter his *Miranda* warnings. *See United States v. Manor*, 936 F.2d 1238, 1241 (11th Cir.1991) (no *Miranda* warnings required where "defendant himself requested the meeting with the officer").

### F.

Baxter also raises several issues with respect to his competency. He alleges that the

---

19. *See* footnote 3.

20. McWilliams testified that he was unable to specifically recall the date on which he had the conversation with Baxter.

21. Baxter gave statements to the police in March and October 1983, while incarcerated on an unrelated charge, in which he expressed a familiarity with the location of Moore's car. Baxter,

however, denied killing Moore and told the police that his friend Grady Couch had killed Moore and that he was neither present for the murder nor involved in the murder in any way.

Baxter was not read his *Miranda* warnings prior to giving these statements in 1983. His attorney, however, was present for the October interview.

trial court erred in failing to conduct a competency hearing and in denying his motion for funds for an independent psychiatrist. He also asserts that he was incompetent to stand trial. We find these contentions to be without merit.

 Under *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985),[22] an indigent defendant has a right to a psychiatrist at public expense upon a showing that the defendant's mental condition is a significant issue during the trial. The "defendant must show the trial court that there exists a reasonable probability both that [the psychiatrist] would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial." *Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.) (en banc), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). We focus on what information was available to the trial judge at the time the judge denied the defendant's motion to determine if the defendant showed a "substantial basis" to justify asking for the appointment of a psychiatrist. *Messer v. Kemp,* 831 F.2d 946, 960 (11th Cir.1987) (en banc), *cert. denied,* 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 902 (1988).

After reviewing the relevant portion of the transcripts, we hold that Baxter failed to make the necessary showing to secure a psychiatrist.[23] *See Messer,* 831 F.2d at 964 (no

22. *Ake* applies to Baxter's case because *Ake* was decided prior to the date that Baxter's conviction became final.

23. Defense counsel asked for a psychiatrist on two occasions. The first time, counsel merely stated that "[w]e have ... asked for funds for an expert, a psychiatrist, to examine and test the defendant to develop mitigating evidence to use at the sentencing phase of the trial." The second time, defense counsel stated that he believed that Baxter should be evaluated because he would not communicate with his attorneys. Baxter, however, was present at that hearing and stated, "I'm ready for trial. The reason I haven't talked to these attorneys is because I have nothing further to say."

24. Baxter contends that the court erred in denying him funds for nonpsychiatric experts. Neither the Supreme Court, nor this court, has held that the Constitution requires a state to provide

error in denying defendant assistance of psychiatrist when he "never said, much less articulated a factual basis for believing, that his sanity at the time of the offenses would be a significant factor at trial ... or that a psychiatrist would enable him to present mitigating evidence at ... sentencing"); *Weeks v. Jones,* 26 F.3d 1030, 1041 (11th Cir.1994) (because defendant failed to show a "substantial basis" to justify appointment of psychiatrist, counsel's failure to make a motion for such appointment was not deficient performance).

Additionally, Baxter's actions were not so bizarre that the trial judge erred in not, sua sponte, ordering a competency hearing; nor has Baxter shown that he was incompetent at the time of trial.[24]

### G.

For the reasons set forth above, we AFFIRM the district court's denial of relief as to Baxter's conviction.[25]

### III.

Baxter also alleges several errors concerning his sentence. We hold that there was sufficient evidence of an aggravating circumstance to allow the death penalty to be imposed. Because we hold, however, that Baxter was denied effective assistance of counsel at sentencing, we REVERSE the district

an indigent defendant with nonpsychiatric experts. *See Moore,* 809 F.2d at 711–12 (declining to decide issue); *Stephens v. Kemp,* 846 F.2d 642, 646 (11th Cir.) (same), *cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988).

25. After a careful review of the record, we hold that the evidence was sufficient to convict Baxter of murder. We also hold that Baxter received effective assistance of counsel at the guilt phase of his trial and that the trial court committed no error when conducting voir dire.

Baxter's contention that the death penalty is sought and applied disproportionately on those accused of killing white females is foreclosed by *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). His argument that death-qualified juries violate the Constitution is foreclosed by *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

court's denial of relief as to Baxter's sentence.[26]

### A.

■ Baxter argues that there was insufficient evidence to allow the jury to conclude that the murder was committed "for the purpose of receiving ... thing[s] of monetary value." O.C.G.A. § 17–10–30(b)(4). We disagree.

The jury heard evidence that Baxter told Anderson that he "saw a money making thing in the parking lot," immediately prior to his departure from their motel room. Further, Baxter returned with several items of value, including a ring and a gun. Additionally, the state introduced a pawn ticket for a ring containing Baxter's thumbprint and dated shortly after Moore's disappearance. Finally, three witnesses testified that Baxter had taken them to Moore's car in order to strip parts. Because "any rational factfinder, given the evidence as presented, could have found ... [the (b)(4)] aggravating factor[] ... present," we conclude that there was sufficient evidence to allow a jury to find that Baxter committed the murder for the purpose of receiving things of monetary value. *Routly v. Singletary,* 33 F.3d 1279, 1297 (11th Cir.1994).

### B.

■ Baxter asserts that his trial counsel, Arch McGarity and Steve Harrison, did not reasonably investigate his long history of mental problems and consequently did not present evidence of his psychiatric problems at sentencing.[27] We agree.

At the state evidentiary hearing, McGarity testified that he believed that Baxter had spent much of his adolescence in the Youth Development Center ("YDC") in Milledgeville, Georgia, an institution for criminal youths. He did not request any records from YDC, believing that "that's not exactly the type [of] school records you want to put in, in my mind." [28] McGarity also testified that, to his knowledge, there was no evidence of Baxter's "previous incarceration in a psychiatric institute."

In fact, Baxter had been committed to Central State Hospital, in Milledgeville, Georgia, a state mental institution.[29] Baxter was first sent to Central State Hospital in June 1965 and stayed there until January 1968. He was recommitted to Central State Hospital in February 1969 and remained there until June 1969. Baxter therefore spent approximately three years of his teenage life in a psychiatric hospital.[30]

■ An ineffective assistance of counsel claim is a mixed question of law and fact subject to plenary review under the test set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Cunningham v. Zant,* 928 F.2d 1006, 1016 (11th Cir.1991). In order to obtain a reversal of his death sentence on the ground of ineffective assistance of counsel, Baxter

must show both (1) that the identified acts or omissions of counsel were deficient, or outside the wide range of professionally competent assistance, and (2) that the deficient performance prejudiced the defense such that, without the errors, there is a

---

**26.** Because we hold that Baxter's counsel were ineffective, we need not reach Baxter's contention that the trial court's instruction concerning mitigating evidence was constitutionally deficient.

**27.** Counsel called only one witness at sentencing, Randy Calvo, a preacher who testified that he was opposed to the death penalty and that he believed that the environment in which Baxter was raised "really didn't have a whole lot to offer anybody."

**28.** Harrison also believed that Baxter "had been at YDC in Milledgeville."

**29.** Central State Hospital is commonly referred to as "Milledgeville."

**30.** Additionally, Baxter's school records from Chatham County indicated that his IQ placed him in the "retarded range," that he was dropped on his head as a baby, leaving a "sunken place" in his head, that his mother was mentally retarded and "at one time it was recommended that she be sterilized," and that his father was a "violent alcoholic."

His records from Central State Hospital similarly indicate that he functioned in the retarded range and that his education stopped after the second grade.

reasonable probability that the balance of aggravating and mitigating circumstances would have been different.

*Bolender v. Singletary,* 16 F.3d 1547, 1556–57 (11th Cir.) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064), *cert. denied,* — U.S. —, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994).

"An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." *Porter v. Singletary,* 14 F.3d 554, 557 (11th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994). The failure to do so "may render counsel's assistance ineffective." *Bolender,* 16 F.3d at 1557.

■ When determining whether defense counsel conducted a reasonable investigation, our inquiry is three-fold. First, "it must be determined whether a *reasonable investigation* should have uncovered the mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a *tactical choice* by trial counsel." *Blanco v. Singletary,* 943 F.2d 1477, 1500 (11th Cir.1991) (emphasis in original) (quoting *Middleton v. Dugger,* 849 F.2d 491, 493 (11th Cir.1988)), *cert. denied,* — U.S. —, 112 S.Ct. 2290, 119 L.Ed.2d 213 (1992); *see also Porter,* 14 F.3d at 557. If the decision was tactical, that decision is afforded a "strong presumption of correctness." *Id.* If, however, the decision was not tactical, we must then determine whether "there is a reasonable probability that absent the errors, the sentencer … would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death." *Blanco,* 943 F.2d at 1503–04 (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068).

We therefore begin our analysis by asking whether a reasonable investigation would have uncovered information concerning Baxter's psychiatric problems and commitment to a psychiatric institution. We hold that had defense counsel conducted a reasonable investigation, they would have unearthed this mitigating evidence.

Defense counsel did investigate Baxter's background to some degree;[31] they did not, however, uncover information concerning Baxter's mental deficiencies. The failure to uncover this information stemmed from defense counsels' failure to request Baxter's records from Central State Hospital, his records from the Chatham County school system, or his records from the Chatham County Department of Family and Children Services. Defense counsel also did not contact a variety of persons, including Baxter's sister, neighbor, and social worker, all of whom knew that Baxter had been committed to Central State Hospital.[32]

The failure to request the records from Central State Hospital and defense counsels' insistence that Baxter had never been in a psychiatric hospital are especially troubling because McGarity knew, prior to trial, that Milledgeville, Georgia, housed a hospital for the mentally ill. This is evident, as when McGarity requested on July 7, 1983, that a psychiatrist evaluate Baxter prior to trial because of the difficulty that counsel was having communicating with Baxter, he stated, "we would ask that [Baxter] be sent to Milledgeville and [sic] evaluated there." Earlier, in another proceeding, the prosecutor referred to Milledgeville, stating "there are plenty of psychiatrists employed by the state of Georgia at Central State or Milledgeville." Additionally, because defense counsel were aware that Baxter was behaving oddly and asked the court that Baxter be evaluated by a psychiatrist, they were on notice of potential psychiatric problems in Baxter's background.[33]

---

**31.** They spoke with Baxter's mother and his brother and went to the Boys Home where Baxter had spent some time.

**32.** An affidavit from Baxter's older sister clearly reveals that the Boys Home "committed [Baxter] to Central State Hospital because they said he was too disturbed to stay in the home any more." Similarly, Baxter's social worker submitted an affidavit saying that she "remember[ed] having

to take Norman to the Central State Hospital in Milledgeville one time." An affidavit from Baxter's childhood neighbor stated, "I distinctly remember one time that Norman was taken away to the crazy house in Milledgeville."

**33.** McGarity stated, "[w]e feel that anyone who is charged in Superior Court with a felony … and who will not communicate with his attorney has a psychiatric problem."

We therefore conclude that a reasonable investigation would have uncovered the mitigating evidence. *See Middleton*, 849 F.2d at 494 (attorney who failed to request "readily discoverable" psychiatric records did not conduct a reasonable investigation). We must now determine whether defense counsels' decision not to pursue its investigation of Baxter's mental history was tactical.

In a wide variety of situations, the decision not to extensively investigate a defendant's background may be tactical. *See Bolender*, 16 F.3d at 1557 n. 11 ("under some circumstances, an attorney may make a strategic decision not to pursue a particular line of investigation or to pursue a particular inquiry only so far"); *Porter*, 14 F.3d at 558 (decision not to introduce evidence of defendant's background for fear of exposing defendant's criminal history to jury was reasonable tactical decision). An attorney is not ineffective because he fails to follow every evidentiary lead or chooses not to put forth mitigating evidence. *See Bolender*, 16 F.3d at 1557; *Harris v. Dugger*, 874 F.2d 756, 763 (11th Cir.) ("attorney is not obligated to present mitigating evidence if after reasonable investigation, he or she determines that such evidence may do more harm than good"), *cert. denied*, 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989); *Stevens v. Zant*, 968 F.2d 1076, 1082 (11th Cir.1992) ("trial counsel's failure to present mitigating evidence is not per se ineffective assistance of counsel"), *cert. denied*, —— U.S. ——, 113 S.Ct. 1887, 123 L.Ed.2d 504 (1993).

An attorney's decision to limit his investigation, however, must "flow from an informed judgment." *Harris*, 874 F.2d at 763. "[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991), *cert. denied*, 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992); *see Blanco*, 943 F.2d at 1502; *Harris*,

874 F.2d at 763 (misunderstanding between attorneys as to who was responsible for gathering mitigating evidence caused failure to investigate; therefore, no tactical decision on part of counsel).

■ There was no informed decision in this case. Rather, defense counsels' failure to conduct a reasonable investigation and failure to present the psychiatric mitigating evidence stemmed largely from a misunderstanding as to where Baxter spent much of his youth. McGarity testified at the state habeas hearing that Baxter "had spent almost all of [his life] in some form of incarceration whether it be in a criminal institution or a YDC.... [He] lived a total life of crime. [We had] no information, we had no behavior on his part whatsoever that led us to believe he was anything but just a criminal." In fact, there was ample evidence that Baxter was not "just a criminal," but that he had mental problems. We therefore conclude that counsel's decisions not to pursue or present this evidence were not tactical. *See Middleton*, 849 F.2d at 494 (decision not to investigate defendant's psychiatric background not tactical when counsel was unaware of existence of psychiatric records).

■ We are mindful that "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In this case, however, despite defense counsels' awareness that Milledgeville has a state psychiatric hospital and despite their belief that Baxter's refusal to talk with his attorneys stemmed, in part, from psychiatric problems, defense counsel failed to take any steps to uncover mental health mitigating evidence that was readily available. We cannot say, under these circumstances, that counsels' performance "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065.[34]

---

34. For the sake of clarity, we reiterate that Baxter failed to show that he was not competent to stand trial or that he was entitled to a psychiatrist. This did not, however, alleviate defense counsels' obligation to fully investigate mental

health mitigating evidence—evidence which, if presented, would likely have changed Baxter's sentence. *See Blanco v. Singletary*, 943 F.2d 1477, 1503 (11th Cir.1991) ("One can be competent to stand trial and yet suffer from mental

N

 Because we conclude that counsels' performance was deficient, we must now determine whether that deficiency caused Baxter prejudice. A petitioner is prejudiced if "there is a reasonable probability that absent the errors, the sentencer ... would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death." *Blanco,* 943 F.2d at 1503–04 (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068).

We hold that Baxter suffered prejudice from his attorneys' failure to conduct a reasonable investigation into his background. Psychiatric mitigating evidence "has the potential to totally change the evidentiary picture." *Middleton,* 849 F.2d at 495. We have held petitioners to be prejudiced in other cases where defense counsel was deficient in failing to investigate and present psychiatric mitigating evidence. *See Stephens v. Kemp,* 846 F.2d 642, 653 (11th Cir.) ("prejudice is clear" where attorney failed to present evidence that defendant spent time in mental hospital), *cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988); *Blanco,* 943 F.2d at 1503; *Middleton,* 849 F.2d at 495; *Armstrong v. Dugger,* 833 F.2d 1430, 1432–34 (11th Cir.1987) (defendant prejudiced by counsel's failure to uncover mitigating evidence showing that defendant was "mentally retarded and had organic brain damage").

While deficient performance in investigating psychiatric mitigating evidence will not always prejudice the defense, the factors suggesting prejudice in this case are strong. First, only one aggravating circumstance was present: that the crime was committed for the purpose of monetary gain. It is therefore likely that testimony of Baxter's mental retardation and psychiatric history as mitigating evidence would have caused the jury to impose a life sentence in lieu of the death penalty. Second, the only mitigating evidence presented at sentencing was Calvo's testimony, which testimony spanned but several minutes. Third, this murder was committed by strangulation—it did not involve the sexual abuse or kidnapping common to other death penalty cases.

health problems that the sentencing jury ... should have had an opportunity to consider"),

Given that the record was virtually devoid of mitigating evidence and given the scarcity of aggravating circumstances, we conclude that had the jury been presented with evidence that Baxter had a long history of psychiatric problems, a reasonable probability exists that the jury would have recommended life imprisonment. We thus hold that Baxter's counsel were ineffective at sentencing.

## IV.

For the reasons expressed above, we AFFIRM the district court's denial of relief as to Baxter's conviction, but REVERSE the denial of relief as to Baxter's sentence.

*cert. denied,* —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 213 (1992).