IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 12, 2000, Session

## JACK JAY NORTH, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hardin County**
**No. 7695, C. Creed McGinley, Judge**

---

**No. W1999-01301-CCA-R3-PC - Decided October 25, 2000**

---

The appellant, Jack Jay North, Jr., was convicted of first degree murder by a Hardin County jury and was sentenced to life imprisonment without the possibility of parole. On appeal, he asserts that the post-conviction court erred in finding trial counsel's performance to be effective during the sentencing phase of trial. Specifically, the appellant contends that trial counsel was ineffective for (1) failing to offer mitigating proof at the sentencing phase; (2) for failing to request funds for a mitigation specialist; and (3) for not objecting to comments made by the State during closing arguments of the sentencing phase. After review, we affirm the judgment of the Circuit Court of Hardin County.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and THOMAS T. WOODALL, J., joined.

Patrick T. McNally, Nashville, Tennessee, for the appellant, Jack Jay North.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, J. Ross Dyer, Assistant Attorney General, G. Robert Radford, District Attorney General, and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, Jack Jay North, Jr., was found guilty of first degree murder in the Circuit Court of Hardin County. The jury then sentenced the appellant to life without the possibility of parole. This court affirmed the appellant's sentence and conviction on direct appeal. *See* State v. Jack Jay North, Jr., No. 02C01-9512-CC-00369 (Tenn. Crim. App. at Jackson, Dec. 12, 1996). On July 6, 1998, the appellant filed a petition for post-conviction relief. Following a hearing, the post-conviction court entered an order denying the appellant's petition. In this appeal of right, the appellant asserts the following errors: (1) trial counsel was ineffective because he failed to argue mitigating proof at sentencing; (2) trial counsel was ineffective because he failed to request funds

for a mitigation specialist; and (3) trial counsel was ineffective for not objecting to comments made by the State during closing arguments of the sentencing phase. Following review, we affirm the judgment of the Circuit Court of Hardin County.

## Background

The appellant and his friend, Galen Rhodes, drove from Corinth, Mississippi, to Savannah, Tennessee, to pay a speeding ticket for a friend. After they found the courthouse closed, they began driving around Savannah. At some point, the appellant and Rhodes went to the house of the victim, Ronald "Frog" Phillips. According to the appellant, Rhodes went to the door of the house and fired a shotgun. The appellant entered the house to find Phillips wounded and crawling across the floor. As Phillips begged for his life, he was fatally shot in the face.

The appellant left the scene in his vehicle and Rhodes followed him in the victim's truck. Later that same night, the appellant was involved in an automobile accident. At the scene, a shotgun and the victim's radio were found in the appellant's vehicle. An electronic organizer was also found in the appellant's vehicle, which had "murder" typed in the memory section of the device.

## I. Failure to Present Mitigating Evidence at Sentencing

The appellant argues that he was denied effective assistance of counsel when trial counsel failed to investigate, identify and present mitigating evidence during the sentencing phase of trial. In response, the State contends that the appellant did receive effective assistance of counsel because adequate mitigating evidence was introduced to the jury during the guilt/innocence phase of trial.

To succeed in a post-conviction claim of ineffective assistance of counsel, the appellant must prove, by clear and convincing evidence, Tenn. Code Ann. § 40-30-210(f)(1997), that the services rendered by trial counsel were deficient and that, but for the deficient performance, the results of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). For purposes of deficient performance, the appellant must show that counsel's representation fell below the range of competence demanded of attorneys in criminal cases, and that, but for these errors, the result of the proceeding would have been different. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). When this court undertakes review of a lower court's decision on a petition for post-conviction relief, the lower court's findings of fact are given the weight of a jury verdict and are conclusive upon appeal absent a finding that the evidence preponderates against the judgment. See State v. Davis, 912 S.W.2d 689, 697 (Tenn. 1995). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court.

In the present case, the appellant contends that trial counsel was ineffective because he failed to investigate and utilize mitigation evidence about the appellant's background during sentencing. The testimony of three family members at the post-conviction hearing revealed the following information about the appellant's background:

The appellant's mother abused drugs and alcohol while pregnant with the appellant.
When the appellant was three weeks old, the appellant's mother and father separated.

The appellant's father divorced the appellant's mother and was awarded custody of the appellant. The appellant's mother, however, disappeared with the appellant before the appellant's father was able to pick him up. The appellant was told that his mother's boyfriend, Mr. Smith, was his father. When the appellant was four years old, his mother brought the appellant to his biological father, told him "This is your real daddy", and said, "Here he is. I cannot take care of him." The appellant's mother then left. The appellant's mother, however, testified that the appellant's father took the appellant from her at gunpoint. Regardless, the appellant remained with his father until his father died when he was approximately twelve years old. The appellant was then returned to his mother. After he commenced living with his mother, he began engaging in juvenile delinquent acts. During his teenage years, the appellant developed alcohol dependency and was placed in an adolescent program called Turning Point. Turning Point determined that the appellant had numerous psychological problems and recommended treatment at Parkway Hospital. The appellant obtained this treatment and various other treatment programs between the ages of thirteen and eighteen. The appellant was twenty years old when the homicide took place.

The appellant also argues that trial counsel had only been practicing for two years at the time of trial and had very little trial experience. Additionally, the appellant contends that trial counsel failed to investigate his past and failed to interview potential family members and friends for the purpose of gathering mitigation evidence. Moreover, the appellant asserts that trial counsel was deficient for failing to produce any witnesses or testimony on his behalf at the sentencing hearing.

Trial counsel, however, testified that he investigated the crime scene and spoke with the appellant's mother on numerous occasions. Trial counsel also testified that he spent many hours visiting with the appellant, explained all aggravating and mitigating factors to the appellant, and informed him of both the guilt/innocence phase and sentencing phase of trial. Trial counsel further testified that it was his opinion that adequate proof of the mitigating factors was presented to the jury at the guilt/innocence phase. Specifically, trial counsel testified that the jury was aware of appellant's intoxication at the time of the incident. Trial counsel also testified that they were aware of his age and that he was trying to work things out with his ex-wife at that time. Additionally, trial counsel testified that the jury was aware that Rhodes had been the "leader" in the murder and that the appellant was under extreme duress or the substantial dominion of Rhodes when the murder took place. Trial counsel explained that neither the appellant nor his mother informed him of the facts and circumstances surrounding the appellant's childhood or any possible impact it might have had on the appellant. Trial counsel, however, also testified that he never examined any of the appellant's school records, institutional records, psychiatric records, or any of appellant's records containing allegations of sexual abuse.

At the sentencing hearing, trial counsel offered no proof on the appellant's behalf, other than the following closing argument:

Ladies and gentlemen, you have found him guilty of first degree murder. Now, you must go back there and decide the punishment for him. The General just mentioned a few moments ago that Mr. Rhodes made the statement he'd give his life if he could have for Mr. Phillips. But you folks know that it was Galen Rhodes that was in control and snuffed his life out. Galen Rhodes was in control of the situation throughout the entire time.

Our client testified yesterday in length. He was very emotional about this. He even said in the middle of his testimony that the man did not deserve to die.

Ladies and gentlemen, the punishment should go to the man who is responsible for the actual taking of Mr. Phillips' life and that's Galen Rhodes. To send this man to prison without the possibility of parole would be an injustice.

I want you to believe one thing. The next 12 people that sit up here in that case of State of Tennessee versus Galen Rhodes, they will serve justice --

Jay North was 21 and previously divorced. He had a hard time. He came over here to pay a ticket for David Houser and that's what he did. He never made it back to Corinth because of Galen Dwayne Rhodes.

Life imprisonment - It isn't easy to send this man to prison for life without the possibility of parole for life. He'd have a hard, hard row to hoe. I'm not going to stand here and say you should go back there and say he doesn't deserve to be treated that way. You have found him guilty.

Take into consideration the guts it took to sit on this stand and tell what happened in front of his family, his friends and his own family. Consider his emotion - He can't make that up. And he did say, "That man did not deserve to die." Thank you.

Likewise, the State made a closing argument at sentencing but offered no additional proof. In his brief, the appellant argues application of the well-established law that in capital cases, "[E]vidence about the defendant's background and character is relevant because of the belief ... that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems may be less culpable than defendants who have no such excuse." California v. Brown, 479 U.S. 538, 544, 107 S.Ct. 837, 841(1987).

At this juncture, however, we note that a sentence of life without the possibility of parole may be distinguished from a sentence of death and from other felony, non-capital cases. A sentence of death is "unique to all other forms of punishment" and involves Eighth Amendment concerns. State v. Harris, 989 S.W.2d 307, 316 (Tenn. 1999); State v. Butler, 980 S.W.2d 359 (Tenn. 1998). Those same concerns, however, do not apply outside the death penalty context. Harris, 989 S.W.2d at 916.

Consequently, a sentence of life without the possibility of parole involves issues which are statutory, rather than constitutional, in nature.

With respect to a capital trial, our supreme court has observed that there is no legal requirement and no established practice that the accused *must* offer evidence at the penalty phase, State v. Melson, 772 S.W.2d 417, 421 (Tenn. Crim. App.), cert. denied, 493 U.S. 874, 110 S.Ct. 211 (1989). The basic concern of counsel during a capital sentencing is to neutralize the aggravating circumstances advanced by the State and to present mitigating evidence on behalf of the defendant. Thus, counsel has a duty to investigate and prepare for a capital trial in both the guilt and the sentencing phases, Goad v, State, 938 S.W.2d 363, 369-370 (Tenn. 1996). Furthermore, before counsel selects a strategy for sentencing in a capital case, he or she must conduct a reasonable investigation into the appellant's background for mitigation evidence to use at sentencing. *See* Baxter v. Thomas, 45 F.3d 1501, 1513 (11th Cir.), reh'g denied, (1995)(*en banc*), cert. denied, 516 U.S. 946, 116 S.Ct. 385 (1995).

Although the constitutional guarantees afforded a sentence of death are distinct from a sentence of life without parole, nonetheless, the two share, within the statutory sentencing scheme of this state, common purposes. A principle purpose is to permit the jury to impose individualized punishment based, in part, on the proof introduced at the jury sentencing hearing. Tenn. Code Ann. § 39-13-204. Therefore, with respect to a sentence of life without the possibility of parole, evidence *may* be presented at sentencing as to any matter the court deems relevant, and may include, but is not limited to, the nature and circumstances of the crime, the defendant's character, background history, physical condition, any evidence tending to rebut the aggravating circumstances enumerated by the State, and any evidence tending to establish any mitigating factors. Tenn. Code Ann. § 39-13-204 (c) (1997 Repl.). In this regard, a sentence of life without parole is analogous to a sentence of death. Accordingly, when a defendant is potentially exposed to a sentence of life without the possibility of parole, trial counsel must conduct a reasonable investigation of the defendant's background for purposes of discovering mitigating evidence. Anything less than a reasonable investigation is deficient.

In the present case, trial counsel's failure to investigate was deficient. At minimum, trial counsel could have reviewed the appellant's school or institutional records. The appellant's mother testified she made trial counsel aware of the appellant's alcohol dependency and related problems. It is not sufficient for trial counsel to claim that the appellant never told him of his childhood problems. If reasonable investigation would have led trial counsel to the discovery of any information which could have been used as mitigation evidence, his failure to conduct such an investigation is below the standard expected of attorneys in criminal cases.

We must then determine whether trial counsel's deficient performance prejudiced the appellant. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. In the present case, the jury found the following three aggravating circumstances.

(5)     The murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death;

(6)  The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant, or another;

(7)  The murder was knowingly committed, solicited, directed, or aided by the defendant, while the defendant had a substantial role in committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, theft, kidnaping, aircraft policy, or unlawful throwing, placing, or discharging of a destructive device or bomb.

Tenn. Code Ann. § 39-13-204(i), (5), (6) and (7).  A sentence of life without the possibility of parole shall be considered appropriate if the State proved beyond a reasonable doubt at least one statutory aggravating circumstance contained in § 39-13-204(i), and the sentence was not otherwise imposed arbitrarily, so as to constitute a gross abuse of the jury's discretion.  Tenn. Code Ann. § 39-13-207(g)(1997 Repl.); *See also* Harris, 989 S.W.2d at 317.   In Harris, our supreme court held that, "when a sentence is based in part upon one or more aggravating circumstances, but at least one valid aggravating circumstance remains, the jury's reliance upon the invalid aggravating circumstance is not reversible."   Id.  While the jury in the present case did not rely on an invalid aggravating circumstance in making their decision, they did rely on three aggravating factors which are clearly supported by the facts and circumstances of this case.   As the post-conviction court concluded, "even if all of the Petitioner's proffered mitigation evidence had been presented during a sentencing phase it would not have had any effect on the outcome of the trial."  We agree.  Nothing contained in the mitigating evidence produced at the post-conviction proceeding is so impacting or rises to such a level as to convince us that the jury verdict would have been different had the evidence been presented.    Therefore, we find the appellant was not prejudiced by trial counsel's deficient performance at sentencing.  Accordingly, this issue is without merit.

Additionally, the appellant  contends that trial counsel was ineffective for failing to request funds to obtain a mitigation specialist.  Specifically, the appellant contends that trial counsel should have made requests "for a mitigation investigator/specialist to assist counsel and to present testimony during the sentencing trial."    To support his position, the appellant cites State v. Barnett, 909 S.W.2d 423, 428 (Tenn. 1995), which holds that a non-capital, indigent defendant is constitutionally entitled to the assistance of a state-funded psychiatric expert.  As previously stated, we find the appellant was not prejudiced by trial counsel's failure to introduce the mitigating evidence at sentencing.  Since no prejudice resulted to the appellant, we find it unnecessary to further address trial counsel's failure to request funds to obtain a mitigation specialist.

## II. Failure to Object During Closing Argument at Sentencing

The appellant argues that trial counsel was ineffective for failing to object to the following comments made by the State during closing argument of the sentencing phase:

(1)  The State referred to the appellant's alleged gang involvement;

(2)  The State argued that the appellant should receive life without parole because he indicated no remorse for the death of the victim;

(3)     The State referred to the appellant's co-defendant and stated that the co-defendant, "stands heads and shoulders above [the appellant]" because the co-defendant indicated remorse;

(4)     The State interjected its personal opinion during closing arguments by using terms such as "I think";

(5)     The State argued that the appellant should receive life without parole because it would be a deterrence and serve as crime control; and

(6)     The State made references to parole possibilities by telling the jury to let the "parole board" worry about the appellant's release when the time comes.

In return, the State primarily asserts that the petitioner was not unduly prejudiced by the prosecuting attorney's statements during closing arguments of the sentencing phase. Additionally, the State points to trial counsel's explanation at the post-conviction proceeding for not objecting:

> It wouldn't have changed their mind in my opinion. Strategically, I think it would have done more harm to [the appellant]. We already had - They had already gone out and spent maybe 19 to 20 minutes finding him guilty, so we knew we had a problem. This jury wasn't going to tolerate a whole lot of mess. If I got up and started objecting every time - General Radford was bad about saying "I think" - then I think it would have done more harm than good.

After reviewing the evidence presented to support the allegation that counsel was ineffective for failing to object to the above comments, the post-conviction court found:

> While this court in reviewing the record in this case, finds that certain statements were made in argument that might be inappropriate and subject to objection, the same were not so prejudicial or inflammatory as to have effected the outcome of this trial. Once again the evidence was overwhelming.

As we have noted above, ineffective assistance requires the presence of both the elements of deficient performance and prejudice. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067. After reviewing the record, we agree with the post-conviction court and find that the appellant was not prejudiced by trial counsel's failure to object to the State's remarks.

We recognize that our scope of review here is limited. Generally, the factual findings of the trial court in post-conviction proceedings "are conclusive on appeal unless the evidence preponderates against the judgment." Coker v. State, 911 S.W.2d 357, 369 (Tenn. Crim. App. 1995); State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983). First we must decide whether the comments made by the State were, in fact, proper. As to the first three statements listed above, we find none constitute misconduct on the part of the State. Furthermore, while the prosecutor must not express personal beliefs or opinions, an argument predicated by the words "I think" or "I submit" is unlikely to be adjudged a personal opinion. Coker, 911 S.W.2d at 368; United States v. Stulga, 584 F.2d 142 (6th Cir. 1978). Therefore, the fourth statement listed above

-7-

also raises no misconduct. The final two statements, however, do constitute inappropriate comments. Any references to parole possibilities during argument, even indirect references, are improper. State v. Nichols, 877 S.W.2d 722, 733 (Tenn. 1994), cert. denied, 513 U.S. 1114 (1995); Smith v. State, 527 S.W.2d 737, 738 (Tenn.1975); Graham v. State, 202 Tenn. 423, 304 S.W.2d 622 (1957). Likewise, the State's comments on crime control and its deterrent effect were also improper. *See* State v. Smith, 857 S.W.2d 1, 12 (Tenn. 1993); *See also* State v. Irick, 762 S.W.2d 121, 131 (Tenn.1988); cert. denied, 489 U.S. 1072, 109 S.Ct. 1357 (1989).

If misconduct is found but no objection was made, the next layer of review in the post-conviction context is to determine whether the failure to raise or preserve the substantive issue amounts to ineffective assistance of counsel. Coker, 911 S.W.2d at 371. After careful review of the record, we conclude that the comments made by the State during closing arguments had no effect on the outcome of this case. We do not find the statements made by the State to violate the appellant's constitutional rights. As such, these statements do not constitute reversible error and this issue is without merit.

## CONCLUSION

This court finds that the appellant was not denied effective assistance of counsel for failing to provide mitigation evidence or for failing to object during the sentencing phase of trial. Therefore, we affirm the judgment of the Circuit Court of Hardin County.

_____
DAVID G. HAYES, JUDGE