Barry Lee FAIRCHILD, Appellee,

v.

Larry NORRIS, Interim Director,
Arkansas Department of
Correction, Appellant.

No. 93–3325EA.

United States Court of Appeals,
Eighth Circuit.

Sept. 22, 1993.

Before ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and BOWMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge, concurring.

This is, practically speaking, Barry Lee Fairchild's fourth petition for federal habeas corpus. The District Court has denied his motion for stay of execution but has also, at the same time, summarily granted habeas relief and directed that the sentence of death be reduced to life imprisonment without parole. The State of Arkansas, acting through the Interim Director of its Department of Correction, appeals and asks that the judgment be summarily reversed.

Fairchild probably did not kill Marjorie Mason. According to his own testimony, an accomplice whom he refuses to name shot and killed the victim. That is the only evidence of record on the point. Moreover, there is no evidence that Fairchild intended that Ms. Mason be killed, or that he expected that she would be killed. He now urges what I shall call an *Enmund* point based on these facts—that under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and later cases interpreting the Eighth Amendment, his mental state was not blameworthy enough to deserve the death penalty.

The *Enmund* argument has never been made before—not in the state courts, and not in any of Fairchild's prior federal habeas petitions. The petition is therefore subject to dismissal as procedurally barred and as an abuse of the writ, unless some reason for avoiding these defenses appears. Fairchild does not argue that there is cause for the failure to make the argument previously, or prejudice, in the specialized sense in which that word is used in habeas procedural jurisprudence. Indeed, it would be impossible for him to establish cause in the context of the State's defense of abuse of the writ, because he himself deliberately and on the record abandoned any argument that would produce for him nothing more than a reduced sentence. He was allowed to make such an explicit relinquishment only after protracted proceedings in this Court and in the District Court on the question of his mental competence. (Ironically, at a later stage of the case, Fairchild occasioned even more protracted proceedings by claiming, unsuccessfully, that he was not intelligent enough to make a valid *Miranda* waiver.) At one point, I questioned counsel for petitioner on the record at an in-chambers argument on a motion for stay of execution, and determined that both he and his client were aware of a potential *Enmund* argument and did not choose to make it. It is hard to imagine a stronger case of waiver—not just waiver through omission, but waiver through affirmative statement.

So we can reach petitioner's *Enmund* point only if he can bring himself within the "actual innocence" or "miscarriage of justice" exception to the normal rules of procedural bar and abuse of the writ. See *e.g., McCleskey v. Zant*, 499 U.S. 467, ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) ("failure to raise the claim in an earlier petition may ... be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim."). In the death-penalty context, "fundamental

miscarriage of justice" means that petitioner must show by "clear and convincing evidence" that no reasonable juror would have found "those elements which render[ed] him eligible for the death penalty." *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2523, 120 L.Ed.2d 269 (1992).

Thus, the fact—and it is a fact—that Fairchild's jury did not find that Fairchild himself had any particular mental state with respect to Ms. Mason's killing, cannot be a ground for relief at this late date. This point, if it had been raised in a proper and timely manner, would apparently have had merit, and it seems that Fairchild's life could have been saved, pending a new penalty proceeding in the state courts. Rather, Fairchild must now show, by clear and convincing evidence, that no reasonable jury could find that he "knowingly engag[ed] in criminal activities known to carry a grave risk of death," *Tison v. Arizona,* 481 U.S. 137, 157, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987), in that his "mental state [was] one of reckless indifference to the value of human life." *Id.* at 152, 107 S.Ct. at 1685. (There is no doubt that Fairchild was a major participant in the kidnapping, rape, and aggravated robbery, so the crucial issue here is that of reckless indifference.) The District Court has fully stated its reasons for holding that Fairchild has met this test. It has found as a fact that Fairchild "did not believe or have any prior suspicion that his accomplice would kill" Ms. Mason. The crux of the case however, is not what the District Court has found, but what a reasonable jury could find. In my view, this case comes down to a comparison of this record with the facts of cases like *Tison* and the various court of appeals opinions cited by the parties. On the one hand there is very little here beyond participation in the underlying felonies. On the other hand, kidnapping, aggravated robbery, and rape—especially rape—are inherently violent and potentially life-threatening. This panel has had about two hours to consider the State's motion. We considered it our duty to give the State an answer tonight. In the end, I am simply not certain enough, one way or the other, to reverse the judgment of a United States District Court in a matter involving human life, without at least some more time for reflection. Under the briefing schedule we have set, there will be an argument on the merits of the State's appeal in about three weeks. This Court will decide the case promptly thereafter.

The anguish this case has caused—especially to the victim and her family—is a matter of deep regret. Among the many sad things about the case is the seeming manipulation of the legal system that this sort of procedure encourages. But under the Supreme Court's precedents, last-minute claims of "actual innocence" of the death penalty must be seriously considered, whatever the previous procedural history of the case.[1] For these reasons, I concur in the Court's order denying the motion for summary reversal.

It is so ordered.

---

1. Both parties refer to a passage in a concurring opinion which I wrote on the occasion of a previous appeal to this Court. When I wrote those words, I did not have in mind the "actual innocence" exception under *Sawyer v. Whitley.*

This incident proves again, if proof were needed, that judges would be better advised to avoid dicta.