Barry Lee **FAIRCHILD**, Appellee,

v.

Larry **NORRIS**, Acting Director,
Arkansas Department of
Correction, Appellant.

No. 93–3325.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1993.

Decided April 8, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied May 13, 1994.

Olan Reeves, Little Rock, AR, argued, for appellant.

Steven Hawkins, New York City, argued (Elaine R. Jones, Theodore M. Shaw and Richard H. Burr, New York City, Herbert C. Rull, III, Charles W. Baker and P.A. Hollingsworth, Little Rock, AR, on brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

This petition is Barry Lee Fairchild's fourth for federal habeas corpus relief. The murder of which he was convicted occurred ten years ago, on February 26, 1983, in Arkansas. The police arrested Fairchild on March 4, 1983, and early on the morning of March 5, he made two videotaped confessions. Between the two confessions, he took the police on a tour, showing them where he and his accomplice kidnapped, raped, and killed the victim, Marjorie Mason. An Arkansas jury convicted him of felony murder and sentenced him to death on August 2, 1983. The issue in this petition is whether the evidence before the jury was sufficient for it to sentence Fairchild to death. The District Court held that the evidence at trial was insufficient for a reasonable jury to find that Fairchild possessed the requisite mental state, extreme indifference to human life, to justify the imposition of the death penalty. The District Court directed that Fairchild's sentence of death be reduced to life imprisonment without parole. The State of Arkansas, acting through the Interim Director of its Department of Correction, appeals and argues that Fairchild has not met the actual-innocence standard. We agree, and now reverse.

I.

Fairchild's case has a ten-year history in the state and federal courts. After a jury convicted him in 1983, the Arkansas Supreme Court affirmed Fairchild's conviction and sentence on direct appeal, *Fairchild v. State,* 284 Ark. 289, 681 S.W.2d 380 (1984), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2346, 85 L.Ed.2d 862 (1985), and denied postconviction relief. *Fairchild v. State,* 286 Ark. 191, 690 S.W.2d 355 (1985). Fairchild then filed his first petition for writ of habeas corpus in federal district court. The District Court denied that petition, *Fairchild v. Lockhart,* 675 F.Supp. 469 (E.D.Ark.1987), and we affirmed. *Fairchild v. Lockhart,* 857 F.2d 1204 (8th Cir.1988), *cert. denied,* 488 U.S. 1051, 109 S.Ct. 884, 102 L.Ed.2d 1007 (1989). The District Court also denied Fairchild's second petition for a writ of habeas corpus. *Fairchild v. Lockhart,* 744 F.Supp. 1429 (E.D.Ark.1989). We affirmed that decision as well. *Fairchild v. Lockhart,* 900 F.2d 1292 (8th Cir.), *cert. denied,* 497 U.S. 1052, 111 S.Ct. 21, 111 L.Ed.2d 833 (1990). The District Court dismissed Fairchild's third petition for habeas corpus, and we remanded for an evidentiary hearing. *Fairchild v. Lockhart,* 912 F.2d 269 (8th Cir.1990). The District Court then concluded that Fairchild was not entitled to relief, and Fairchild appealed that decision. *Fairchild v. Lockhart,* No. PB–C–85–282 (E.D.Ark., June 4, 1991). We affirmed the District Court's order, *Fairchild v. Lockhart,* 979 F.2d 636 (8th Cir. 1992), *cert denied,* —— U.S. ——, 113 S.Ct. 3051, 125 L.Ed.2d 735 (1993). Finally, Fairchild filed the petition at issue in this case. The District Court directed that his death sentence be changed to life in prison without parole, *Fairchild v. Norris,* No. PB–C–85–282, mem. op. (E.D.Ark. Sept. 22, 1993). This Court denied summary reversal and ordered an expedited appeal. *Fairchild v. Norris,* 5 F.3d 1124 (8th Cir.1993). The District Court entered a later order further

explaining its reasoning. *Fairchild v. Lockhart,* No. PB–C–85–282, Addendum to mem. op. (E.D.Ark. Sept. 24, 1993). We now address the State's appeal.

We forego a complete recitation of the facts in this opinion, because our prior opinions provide them in detail. Instead, in our analysis, we focus only on those facts relevant to the issue on appeal.

## II.

### A.

■ The rules governing writs of habeas corpus bar most successive petitions. 28 U.S.C. § 2254, Rule 9(b). Therefore, because this petition is Fairchild's fourth, we must address whether the petition should be barred as an abuse of the writ, before reaching the merits of his argument. Although the government bears the burden of pleading an abuse of the writ, once it does so, the petitioner bears the burden of proving that his petition is not an abuse of the writ. *Sanders v. United States,* 373 U.S. 1, 10–11, 83 S.Ct. 1068, 1075, 10 L.Ed.2d 148 (1963). Unless the petitioner meets this burden, a court cannot proceed to the merits of his claim. See *McCleskey v. Zant,* 499 U.S. 467, 477, 111 S.Ct. 1454, 1461, 113 L.Ed.2d 517 (1991). The general bar against abusive or successive claims extends to new claims which could have been raised or developed in an earlier petition, *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), and to successive claims which raise grounds identical to those heard and decided on the merits in a previous petition, *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

Fairchild argues in his present petition that the evidence presented against him at trial was legally insufficient to justify the death penalty. This argument was not raised in any of his previous petitions, though it clearly could have been. We cannot reach the merits of Fairchild's contention unless he qualifies for some exception to normal abuse-of-the-writ principles.

■ The Supreme Court has carved out two types of exceptions to the general bar against successive writs. To qualify for the first exception, a petitioner must show cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *McCleskey v. Zant, supra,* 499 U.S. at 493, 111 S.Ct. at 1469–70. Simply put, this standard requires the petitioner to show cause for failing to raise the claim in an earlier petition and prejudice resulting from that failure. Fairchild cannot qualify for the cause-and-prejudice exception, and he does not argue that he can. Under the second exception, a court may decide the claim on the merits if the defendant is actually innocent of the crime itself or of the death-penalty sentence. *Herrera v. Collins,* —— U.S. ——, ——, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993); *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). A defendant can be actually innocent of the death penalty if the evidence at trial failed to establish the existence of an aggravating circumstance or another condition of eligibility. *Sawyer v. Whitley, supra,* —— U.S. at ——, 112 S.Ct. at 2522. To qualify for this "actual innocence" exception, the defendant must show "by clear and convincing evidence that but for the constitutional error, no reasonable juror" would have found him eligible for the death penalty. *Id.* at ——, 112 S.Ct. at 2524. The inquiry is not "whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins, supra,* —— U.S. at ——, 113 S.Ct. at 861.

The Supreme Court has considered and rejected several proposed applications of the actual-innocence exception, repeatedly emphasizing the narrowness of its scope. See *Dugger v. Adams,* 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989), and *McCleskey v. Zant, supra.* Moreover, the Court has "refused to hold that the fact that a death sentence has been imposed requires a different standard of review on federal habeas corpus." *Herrera v. Collins, supra,* —— U.S. at ——, 113 S.Ct. at 863, citing *Murray v. Giarratano,* 492 U.S. 1, 9, 109 S.Ct. 2765, 2770, 106 L.Ed.2d 1 (1989) (plurality opinion).

We consider Fairchild's claim under the actual-innocence exception, because Fairchild argues that he lacked the required mental

state to be sentenced to death. The District Court agreed, finding that the evidence at trial was insufficient to support the jury's sentence of the death penalty. Therefore, we must review the evidence to determine whether Fairchild has proved by clear and convincing evidence that no reasonable juror could have found him eligible for the death penalty under accepted Eighth Amendment principles.

### B.

Fairchild argues that his conviction violated the Eighth Amendment prohibition against cruel and unusual punishment, because the evidence on which the jury based its conviction was insufficient to support a finding, under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), that the death penalty was an appropriate sentence. The District Court held that Fairchild's Eighth Amendment rights were violated because the trial court's instructions to the jury did not specify that the jury had to find that Fairchild had the mental intent required when imposing a death sentence. More importantly, the District Court specifically held that no reasonable jury could have so found.

■ Before a defendant can be sentenced to death, our Constitution requires that he be guilty of a certain degree of culpable conduct. In *Enmund v. Florida, supra,* and *Tison v. Arizona, supra,* the Supreme Court elaborated on the necessary mental state in the felony-murder context. In *Enmund,* the Court held that states could not impose the death penalty on an accomplice to a felony murder who "[did] not himself kill, attempt to kill, or intend that a killing take place or that lethal force [would] be employed." *Enmund v. Florida, supra,* 458 U.S. at 797, 102 S.Ct. at 3377. The defendant in *Enmund* was the driver of a getaway car whose codefendants had entered a house to commit an armed robbery. Those codefendants shot and killed several people after one of the residents fired on them. *Id.* at 784, 102 S.Ct. at 3370. Because Enmund was not present when the shots were fired, and the evidence did not show that he had any intent to kill or use lethal force, the Court held that Enmund's death sentence was unconstitutional.

The Court further elaborated on the principle of proportionality in felony-murder sentencing in *Tison v. Arizona, supra.* In *Tison,* the Court stressed that two types of cases occur at opposite ends of the felony-murder spectrum. At one end of the spectrum are "minor actor[s] in an armed robbery, not on the scene, who neither intended to kill nor [were] found to have had any culpable mental state," while at the other are felony murderers "who actually killed, attempted to kill, or intended to kill." 481 U.S. at 149–50, 107 S.Ct. at 1684. *Tison* addressed those cases in which the felony-murder defendants played an intermediate role in the murder. The Court defined that role as major participation in the crimes combined with a mental state of reckless indifference to human life. *Id.* at 158, 107 S.Ct. at 1688. The petitioners in *Tison,* two brothers, had armed their father and another convict and helped them escape from prison. Their car broke down, and one of the brothers flagged down a passing car which contained a family of four. They kidnapped the family, one of the brothers robbed them, and, while their father and the co-escapee decided what to do next, guarded the family at gunpoint. Later, while the brothers were occupied nearby, the two escapees shot and killed the family. Neither brother attempted to assist the victims before, during, or after the shooting; instead, they helped the killers continue their planned escape. *Id.* at 151–52, 107 S.Ct. at 1685.

Although neither brother specifically intended to kill the victims, nor did either actually fire the fatal shots, the Supreme Court found that the death penalty could be constitutionally applied to them. In reaching its conclusion, the Court noted that "the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." *Id.* at 157–58, 107 S.Ct. at 1688. The Supreme Court held that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the

*Enmund* culpability requirement." *Id.* at 158, 107 S.Ct. at 1688.

### III.

#### A.

■ From the transcript, we know that the evidence before the jury included Fairchild's videotaped confessions, his testimony at trial, and a watch similar to one owned by the victim. In his confession, Fairchild stated that he and his accomplice[1] kidnapped Ms. Mason. He told the police that they followed her to her car and that, after she got into her car, they walked up to the car and got in on the other side. Moreover, he stated that his accomplice had a gun and pulled it on Ms. Mason. He also described the gun for the police, telling them that it was a short-barrelled, nickel-plated gun.

After they got into Ms. Mason's car, they drove to Scott, Arkansas, where Fairchild's accomplice got out of the car with the victim and went into a deserted house. Fairchild said that his accomplice raped Ms. Mason, and that he raped her as well. At this point, Fairchild's confession is somewhat inconsistent; however, he did state that after raping Ms. Mason he returned to her car and went through her purse, removing cash.

Fairchild stated in his confession that he did not expect his accomplice to murder Ms. Mason. Instead, on the basis of his accomplice's remarks, Fairchild said that he believed that they were going to leave when it became dark. He returned to the car, and while he was waiting, he heard two gunshots. Then, he ran into the house, saw Ms. Mason lying on the floor, and questioned his accomplice as to what he had done. His accomplice responded that shooting Ms. Mason was the only way out. Fairchild told his accomplice that it had not been necessary to shoot Ms. Mason, and his accomplice told him to forget it. Fairchild then said, "Well, we need to get out of here now" (Tr. 854). They left the house and drove away in Ms. Mason's car.

While driving away, Fairchild and his accomplice were followed by a state trooper. They increased their speed, abandoned Ms. Mason's car, ran across a field, and escaped. Eventually, the police focused their investigation on Fairchild and attempted to find him. Several days later, they caught him trying to take a bus to California.

Fairchild's trial testimony differed considerably from his videotaped confessions. At trial he testified that he did not participate in the kidnapping, rape, or robbery of Ms. Mason. Instead, he testified that he made both confessions only after the police beat him severely and forced him to recite the confessions, which they had made up for him, on tape.[2]

The physical evidence at trial included a watch which Ms. Mason's family members said was identical to one she had owned. The police found the watch after Fairchild told them in his confession that his accomplice had stolen it and given it to Fairchild, who, in turn, had sold it to his sister. The police retrieved the watch from Fairchild's sister, who told them that her brother had sold it to her. At trial, Fairchild testified that he bought the watch from someone at a pool hall, and sold it to his sister.

#### B.

To determine whether the evidence presented to the jury at the trial was sufficient to sustain Fairchild's sentence of death, we must determine where on the felony-murder spectrum this case lies. For the purposes of our analysis, we assume, on the basis of his confession, that Fairchild, unlike *Enmund,* actually participated in the kidnapping, robbery, and rape of Ms. Mason. The jury was entitled to believe the confessions. However, we also assume that Fairchild was not actually present when his accomplice pulled the trigger and, like the Tisons, did not fire the gun himself. On the basis of that evidence, Fairchild's actions fall somewhere in between the accomplice who remains outside in the

---

1. To this day, Fairchild's accomplice remains unidentified. In his confession, Fairchild said that his accomplice was a man named Harold Green. However, at trial, Fairchild stipulated to the fact that Harold Green was in Colorado at the time the crimes took place.

2. In one of Fairchild's previous proceedings, the District Court found as a fact that Fairchild had not been coerced, and that his confessions were voluntary. We affirmed. *Fairchild v. Lockhart,* 675 F.Supp. 469, 490–91 (E.D.Ark.1987), aff'd., *Fairchild v. Lockhart,* 857 F.2d 1204, 1207 (8th Cir.1988).

getaway car and has no other involvement in the crime, and the accomplice who actually killed the victim, intended to do so, or attempted to do so. Thus, we must consider Fairchild's actions in light of the intermediate standard enunciated in *Tison*, and review the evidence to determine whether it was sufficient to sustain his death sentence. Specifically, we must consider whether Fairchild has proved by clear and convincing evidence that no reasonable jury could have found that he was a major participant in the felonies and he acted with reckless indifference to human life.[3]

The evidence before the jury revealed that Fairchild, like the Tisons, was an active and major participant in the underlying felonies. He participated in the kidnapping of Ms. Mason, climbing into her car with his accomplice. He personally took the money from her purse. And he raped her. See *Lesko v. Lehman*, 925 F.2d 1527, 1550–52 (3d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 273, 116 L.Ed.2d 226 (1991); *Duboise v. State*, 520 So.2d 260, 266 (Fla.1988); *People v. Jimerson*, 127 Ill.2d 12, 53, 129 Ill.Dec. 124, 142, 535 N.E.2d 889, 907 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990). He also was aware that his accomplice had a gun, and he was there when his accomplice first pulled the gun on Ms. Mason.

Moreover, Fairchild's conviction was based primarily on direct evidence, his own confessions. *Cf. Jackson v. State*, 575 So.2d 181, 192 (Fla.1991). Most of the evidence presented to the jury consisted of those confessions and a watch found as a result of the confessions. He testified at trial that the confessions were not true and were beaten out of him, but it was up to the jury to decide whether to believe his taped confessions or his testimony at trial. Obviously the jury believed the confessions, and we do not believe that it was irrational for it to do so. See *Herrera v. Collins, supra*, —— U.S. at ——, 113 S.Ct. at 861. A rational jury could have concluded that Fairchild was a major participant in the crimes leading to the death of Ms. Mason.

Fairchild argues that his actions did not exhibit reckless indifference to human life. For example, he argues that he was not present when his accomplice shot Ms. Mason. We note, however, that the actual presence or close proximity of the defendant is but one factor among many a jury may consider in sentencing a felony murderer to death. See *State v. Branam*, 855 S.W.2d 563, 570 (Tenn. 1993); *People v. Jimerson*, 127 Ill.2d at 53, 129 Ill.Dec. at 142, 535 N.E.2d at 907. When his accomplice shot Ms. Mason, Fairchild, like the Tisons, did not attempt to assist her. Instead, after hearing the shots and reentering the house, Fairchild stated that they "need[ed] to get out of [there] now." Then, he left the scene with his accomplice, attempting to evade the police for several days thereafter.

Fairchild argues that he did not know that Ms. Mason would be killed, did not expect it to happen, and was, in fact, surprised when he heard the gunshots. These assertions may all be true, but they are not dispositive. The issue is not actual subjective knowledge or intent, but reckless indifference to human life. Fairchild joined an armed accomplice in the kidnapping, robbery, and rape of Ms. Mason. Although Fairchild's confessions refer to the gun's existence only at the kidnapping stage, once Ms. Mason knew of the gun's existence, it represented an implied threat throughout the entire incident. Moreover, Fairchild told the police that he heard Ms. Mason beg him and his accomplice not to hurt her; yet, her pleas did not deter him from further participation in the crimes. Then, after the rapes, Fairchild allowed his accomplice to go back into a deserted house, with a gun, to the room where Ms. Mason had been left. It was highly foreseeable that these events might culminate in death. Finally, the jury could easily have concluded that Fairchild had a motive to want Ms. Mason killed. After all, he had just helped kidnap her at gunpoint, robbed her, and raped her. Other than his accomplice, Ms. Mason was the only witness to these crimes. On the basis of this evidence, we believe that

---

**3.** Arkansas law requires a showing of "circumstances manifesting extreme indifference to the value of human life," before a felony-murder defendant may be sentenced to death. Ark.Code Ann. § 5–10–101. The Supreme Court cited this statute as one of those falling into the intermediate category it examined in *Tison*. *Tison, supra,* 481 U.S. at 153, 107 S.Ct. at 1685.

a reasonable jury could have found that Fairchild's actions exhibited reckless indifference to human life.

We hold that Fairchild has failed to prove by clear and convincing evidence that, but for a constitutional error, no reasonable juror could have found him eligible for the death penalty. Instead, we conclude that the evidence at trial was sufficient for a reasonable juror to find that Fairchild was a major participant in the felonies and that he acted with reckless indifference to human life, which culminated in Ms. Mason's death.

## IV.

Fairchild does not qualify for the actual-innocence exception, for reasons we have given in this opinion. We therefore are not allowed to reach the merits of his current petition. We respectfully disagree with the District Court's contrary conclusion. The judgment is reversed, and the cause remanded with directions to dismiss the petition.

It is so ordered.