**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-3789EM

| | | | | |
|---|---|---|---|---|
| Roy Roberts, | * | | | |
| | | * | | |
| Appellant, | * | | |
| | | * | Appeal from the United States |
| v. | | * | District Court for the Eastern |
| | | * | District of Missouri. |
| Michael Bowersox, | * | | |
| | | * | |
| Appellee. | * | | |

_____

Submitted:  December 8, 1997
Filed:  March 3, 1998
_____

Before FAGG, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

FAGG, Circuit Judge.


During a Missouri prison riot, inmate Roy Roberts restrained an unarmed guard and fended off would-be rescuers while two other inmates, Robert Driscoll and Rodney Carr, stabbed the guard to death with knives honed from metal rulers.  Believing eyewitnesses who testified for the State, a jury rejected Roberts's defense of mistaken identity and convicted him of capital murder.  Roberts received the death penalty.  See Mo. Rev. Stat. §§ 565.001, .006, .008 (1978) (repealed Oct. 1, 1984).  The Missouri Supreme Court affirmed Roberts's conviction and sentence, see State v. Roberts, 709 S.W.2d 857 (Mo.), cert. denied, 479 U.S. 946 (1986), and affirmed the denial of state

postconviction relief, <u>see</u> <u>Roberts v. State</u>, 775 S.W.2d 92 (Mo. 1989), <u>cert. denied</u>, 494 U.S. 1039 (1990). Roberts then turned to the federal courts and filed a petition for a writ of habeas corpus in March 1990. <u>See</u> 28 U.S.C. § 2254 (1994). The district court denied relief, and Roberts appeals. We affirm.

We grant Roberts's motion to supplement the record with exhibits from the state postconviction proceeding, and turn to the substance of his appeal.

Roberts first asserts his death sentence violates the Eighth Amendment because in explaining the jury's sentencing role throughout the trial, the prosecutor "led [the jury] to believe that the responsibility for determining the appropriateness of [Roberts's] death rest[ed] elsewhere." <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 329 (1985). The State contends Roberts is barred from asserting this claim, but we disagree. First, the Supreme Court decided <u>Caldwell</u> before Roberts's conviction and sentence became final, so <u>Caldwell</u> is not being applied retroactively on collateral review. <u>See</u> <u>McDonald v. Bowersox</u>, 101 F.3d 588, 597 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 2527 (1997). Second, although Roberts did not object to the prosecutor's explanations during the trial, the Missouri Supreme Court reviewed Roberts's <u>Caldwell</u> argument for plain error on direct appeal. <u>See</u> <u>Roberts</u>, 709 S.W.2d at 868-69. Thus, we also review the <u>Caldwell</u> issue for plain error, granting relief only if there is manifest injustice. <u>See</u> <u>Mack v. Caspari</u>, 92 F.3d 637, 641 & n.6 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1117 (1997).

In support of his <u>Caldwell</u> claim, Roberts relies heavily on <u>Driscoll v. Delo</u>, 71 F.3d 701 (8th Cir. 1995), <u>cert. denied</u>, 117 S. Ct. 273 (1996). Driscoll and Roberts, cohorts in the guard's stabbing, were prosecuted separately by the same State's attorney. Like Roberts, Driscoll was convicted of capital murder and sentenced to death. We granted habeas relief to Driscoll, concluding his death sentence violated the Eighth Amendment because the prosecutor misled the sentencing jury into believing the judge was ultimately responsible for the sentencing decision.

Throughout [Driscoll's] trial, the prosecution made statements to the jury that were calculated to diminish the degree of responsibility the jury would feel in recommending a sentence of death. The prosecutor repeatedly referred to the judge as the "thirteenth juror" and explained that the jury's sentence of death would be a mere recommendation to the judge; in his most egregious statements, the prosecutor announced that "juries do not sentence people to death in Missouri," and, at one point, even told jurors it did not matter whether they returned a recommendation for the death penalty because the judge can simply overrule their decision.

Id. at 711.  When Driscoll and Roberts were tried, Missouri's capital murder statute permitted imposition of a death sentence only if the jury unanimously voted for death.  See Mo. Rev. Stat. § 565.006 (Supp. 1982) (repealed effective Oct. 1, 1984).  Under Missouri Supreme Court Rule 29.05, the court could "reduce the punishment within the statutory limits prescribed for the offense if [the court found] the punishment [was] excessive."  In Driscoll, we held the prosecutor's statements were technically accurate descriptions of Missouri law, but they "were impermissible because they misled the jury [about] its role in the sentencing process in a way that allowed the jury to feel less responsibility than it should for its sentencing decision."  71 F.3d at 713. Contrary to the prosecutor's statement that the jury's recommendation did not matter, we said the jury's decision to recommend a death sentence was "a matter of almost unparalleled importance."  Id.  The judge could not have sentenced Driscoll to death without the jury's recommendation to do so, and no Missouri judge has ever sentenced a defendant to life imprisonment when the jury has recommended death.  See id. & n.10.

In Roberts's case, the prosecutor also told the jury it would recommend a sentence to the judge, who would make the final sentencing decision.  During voir dire, the prosecutor made clear that if the jury recommended life in prison, the judge could not render a death sentence, but if the jury recommended death, the judge could impose either life imprisonment or the death penalty.  The prosecutor told the jurors they were not imposing the death penalty, but were giving the judge the opportunity to impose it.  The prosecutor explained that the judge is like the thirteenth juror and has veto power.

See Roberts, 709 S.W.2d at 868 n.11 (excerpt of voir dire). Later, while questioning a priest during the punishment phase, the prosecutor asked whether the priest had "any quarrel with the system where the jury itself doesn't actually sentence someone to death but makes a recommendation to the Judge that he can consider it if he wants to, checking into the background of the Defendant?" Finally, during closing argument, the prosecutor said:

> [M]y plea to you is not a plea to kill Roy Roberts. . . . All I want you to do is give [the] Judge . . . the right to find out the background of this guy so, in fact, if it is justified he can do it. . . . I am not asking you to put Roy Roberts to death. I am just asking you to give the Judge the opportunity to study it and make a conscious well thought out decision about what is fair and just.

Contrary to Roberts's contention, the prosecutor's remarks were not misstatements of Missouri law because Missouri Supreme Court Rule 29.05 authorized the judge to reduce a death sentence. See Driscoll, 71 F.3d at 713; Roberts, 709 S.W.2d at 869. Thus, we turn to the question of whether the statements misled the jury.

Despite similarities between the prosecutor's comments in this case and in Driscoll, we believe the jury in Roberts's case was not misled about the significance of its role. It is true that in both cases the prosecutor repeatedly said the jury does not sentence the defendant to death but only recommends it, and the judge is the thirteenth juror and has veto power. In Roberts's case, the prosecutor also implied the judge would have more information than the jury and be better able to make the right sentencing decision. Nevertheless, we believe it is significant that Roberts's attorney informed the jury that no judge in Missouri had ever imposed a life sentence after a jury recommended death. In addition, while Driscoll's jury was told its decision didn't matter, Roberts's jury was not put on the sidelines. Instead, Roberts's jury was accurately informed the judge could not impose the death penalty if the jury recommended life in prison, but if the jury recommended the death penalty, the judge

would almost certainly impose it. Further, the jury was instructed it had the "primary duty and responsibility to fix the punishment." Because Roberts's jury was not misled about the significance of its sentencing role, we conclude the prosecutor's statements did not violate Caldwell.

Roberts also contends prosecutorial misconduct led to his conviction and violated his right to due process. According to Roberts, the prosecutor improperly suggested Roberts was in jail for murder, questioned the integrity of Roberts's attorney, said the jury merely recommended a sentence to the judge, and implied the prosecutor had special knowledge. Because the Missouri Supreme Court reviewed this contention for plain error, we do so as well.

Prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render Roberts's conviction a denial of due process. See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Duvall v. Reynolds, 131 F.3d 907, 933 (10th Cir. 1997). Improper prosecutorial remarks violate due process when there is a reasonable probability the remarks affected the trial's outcome. See Newlon v. Armontrout, 885 F.2d 1328, 1336-37 (8th Cir. 1989). To decide the effect of a prosecutor's remarks, we examine the totality of the circumstances. See Antwine v. Delo, 54 F.3d 1357, 1363 (8th Cir. 1995) (listing factors).

During opening statements, Roberts's attorney told the jury the evidence would show Roberts was not in prison for murder and Roberts had never been convicted of killing anyone. After the State presented its case, however, Roberts's attorney decided not to put Roberts on the stand to introduce evidence about his earlier crimes. During closing argument, the prosecutor questioned the attorney's honesty several times and repeatedly referred to the attorney's failure to show Roberts had not murdered before. Among other things, the prosecutor said, "It makes you wonder . . . why, the reason Roy Roberts was in the penitentiary . . . . [The defense attorney] led you to believe he

was going to be honest and tell you everything about Roy Roberts . . . . What is he hiding?"

Even if the prosecutor's remarks were improper, they did not violate due process. Defense counsel reduced any prejudice in his response to the prosecutor's closing argument. The defense attorney pointed out the State's witnesses had said "[n]othing about Roy Roberts killing anybody before this," and explained he did not put Roberts on the stand because the State's case was weak. The jury was also told the lawyers' arguments were not evidence. Further, there was eyewitness testimony that Roberts was the person who held the guard during the stabbing, and that Driscoll's stabbing of the guard was obvious to all, including Roberts, from Driscoll's movements and the large amount of blood on the guard's shirt. We cannot say there is a reasonable probability that the jury would have found Roberts innocent of capital murder absent the prosecutor's comments. The comments could not have affected the jury's decision to return the death penalty because the jury was informed of Roberts's criminal record in the trial's punishment phase. After learning Roberts had not murdered before, the jury still chose the harshest sentence.

We likewise see no due process violation in the prosecutor's other comments because defense counsel minimized any prejudice. Roberts's attorney countered the prosecutor's statements about the jury merely recommending a death sentence by pointing out no judge had ever disregarded a jury's recommendation of death. As for the comments suggesting special knowledge, Roberts's attorney objected when the prosecutor said, "I am convinced when you look at the facts you will know that the year I spent with [law enforcement officials] after sitting and sifting through the facts that Roy Roberts did engage in conduct which further[ed] the death of [the guard]." The trial court sustained the objection.

Roberts next claims ineffective assistance of counsel based on his attorney's failure to object to the prosecutor's characterizations of accomplice liability during voir

dire and closing argument. During voir dire, the prosecutor said that if a person deliberately does an act that makes it possible for an associate to commit murder, that person is just as responsible under the law, and if a group of robbers goes into a convenience store knowing some in the group have guns, the group's concerted action makes them all responsible for the consequences, including murder. In his closing argument, the prosecutor explained: "This is a crime where individuals act in concert with each other . . . . [A]ll engaged in it with the purpose of hurting someone and they died. . . . [Roberts] made a substantial contribution to the death of [the guard]." The prosecutor explained to the jury that the intent instruction did not require them to find Roberts specifically intended to kill the guard, but only to find Roberts acted together with or helped Carr or Driscoll with the purpose of promoting or furthering the guard's death. The prosecutor then argued to the jury that Roberts "was intending to beat people, intending to hurt people. He had the intention to hold [the guard]." Roberts claims the prosecutor's comments made clear Roberts could be convicted of capital murder and sentenced to death without proof that he intended to kill anyone. Roberts asserts this standard violates Enmund v. Florida, 458 U.S. 782 (1982), and thus his attorney's failure to object amounts to deficient performance. We disagree.

Enmund is a felony-murder case that holds a death sentence violates the Eighth Amendment when the defendant lacked the intent to kill or cause death. See id. at 798-801; Reeves v. Hopkins, 102 F.3d 977, 984 (8th Cir. 1996), cert. granted in part, 118 S. Ct. 30 (1997); Fairchild v. Norris, 21 F.3d 799, 802 (8th Cir. 1994). Nevertheless, the intent requirement is satisfied when the defendant is a major participant in either the killing or underlying felony, and is recklessly indifferent to human life. See Tison v. Arizona, 481 U.S. 137, 158 (1987); Reeves, 102 F.3d at 984; Fairchild, 21 F.3d at 802-03. The defendant need not have the specific intent to kill the victim. See Tison, 481 U.S. at 157; Fairchild, 21 F.3d at 802.

The evidence in this case satisfied the Enmund standard. Roberts was a major participant in the murder itself, and his actions showed a reckless indifference to the

guard's life.  Roberts, a 300-pound man, held the victim to prevent his retreat to the safety of the guard's station, continued to hold the victim after the stabbing started and the victim's shirt became soaked in his own blood, assaulted other guards who tried to save the victim, then resumed his grip on the victim so the stabbing could continue.  Thus, even if Roberts did not know when he first restrained the guard that Driscoll and Carr had murder in mind, he continued to serve a vital role in the attack after its lethal nature became apparent.  Because Roberts had the requisite intent for imposition of a death sentence, his sentence does not violate the Eighth Amendment. The prosecutor's comments were not clearly improper, and Roberts has not overcome the strong presumption that his attorney's failure to object could be deemed sound trial strategy.  See Garrett v. United States, 78 F.3d 1296, 1304 (8th Cir.), cert. denied, 117 S. Ct. 374 (1996).  Thus, the defense attorney's failure to object to the prosecutor's comments was not constitutionally deficient.  See id.

Roberts also attacks the jury instruction on accomplice liability.  The State argues we should not consider the argument because we declined to include it in the certificate of appealability we issued to Roberts in February 1997 under 28 U.S.C.A. § 2253(c)(3) (West Supp. 1997).  Roberts responds that he does not need a certificate of appealability because the district court granted him an unlimited certificate of probable cause in August 1995, before § 2253(c)(3), part of the Antiterrorism and Effective Death Penalty Act of 1996 (the Act), became effective on April 24, 1996.  Although the pre-Act certificate of probable cause and the post-Act certificate of appealability both issue on a substantial showing of the denial of a constitutional right, see Tiedeman v. Benson, 122 F.3d 518, 521 (8th Cir. 1997), a certificate of appealability is narrower in scope, see Herrera v. United States, 96 F.3d 1010, 1012 (7th Cir. 1996).  "[A] certificate of probable cause places the case before the court of appeals, but a certificate of appealability must identify each issue meeting the 'substantial showing' standard." Id.  We have held the certificate of appealability requirement applied to a state prisoner who had filed his federal habeas petition but had not obtained a certificate of probable cause or filed a notice of appeal before the Act's

effective date. See Tiedeman, 122 F.3d at 520-21; accord Reyes v. Keane, 90 F.3d 676, 679-80 (2d Cir. 1996). When a state prisoner has obtained a certificate of probable cause before the Act became effective, courts have held the Act's certificate of appealability requirement does not apply. See Brown v. Cain, 104 F.3d 744, 748-49 (5th Cir.), cert. denied, 117 S. Ct. 1489 (1997); Herrera, 96 F.3d at 1012. The reasoning is that applying the certificate of appealability requirement to a petitioner who had already properly been certified for appeal would raise retroactivity concerns. See Brown, 104 F.3d at 748-49. But in at least one of the cases, the petitioner had filed a notice of appeal before the Act became effective. See Herrera, 96 F.3d at 1011. By contrast, Roberts filed his notice of appeal after the Act went into effect. Given some doubt about whether the instruction issue is properly before us, we believe it prudent to consider its merits.

Roberts claims the accomplice liability instruction violates his due process and Eighth Amendment rights because the instruction did not require the jury to find Roberts deliberated before helping to kill the guard. To convict Roberts of first-degree murder based on accessory liability, Missouri law requires a finding that with the purpose of promoting or furthering the guard's death, Roberts committed acts that helped Driscoll and Carr kill the guard, and Roberts committed the acts after deliberating on the guard's death for some amount of time, however short. See Roberts, 709 S.W.2d at 863-64; State v. O'Brien, 857 S.W.2d 212, 218 (Mo. 1993) (en banc). Consistent with Missouri model instructions at the time, the jury was instructed to find Roberts guilty of capital murder if Driscoll and Carr committed capital murder and if, "with the purpose of promoting or furthering the death of [the guard], [Roberts] acted together with or aided . . . [Carr or Driscoll] in causing the death of [the guard] and reflected upon this matter coolly and fully." See Roberts, 709 S.W.2d at 863 n.7 (text of given instruction). Roberts contends the instruction did not require the jury to find Roberts reflected before helping cause the guard's death, rather than after. We think this interpretation is strained, at best. Because of the instruction's organization and a juror's common sense, we think a reasonable juror would

understand the defendant must have reflected on the matter before the crime occurred. <u>See</u> <u>Sandstrom v. Montana</u>, 442 U.S. 510, 514-15 (1979) (looking to way reasonable juror could have interpreted instruction).

Even if the instruction is erroneous, federal habeas relief is warranted only if the instruction contains a fundamental defect resulting in a complete miscarriage of justice. <u>See</u> <u>Martin v. Norris</u>, 82 F.3d 211, 217 (8th Cir. 1996). We see no miscarriage of justice in Roberts's case. When Roberts was convicted, there was no alternative instruction sanctioned by the Missouri Supreme Court, so due process did not require the reading of some other instruction. <u>See</u> <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154-56 (1977). And, as our earlier <u>Enmund</u> discussion makes clear, the jury could easily infer from Roberts's actions that he deliberated about the guard's death at least momentarily and had the intent necessary to allow imposition of the death penalty consistent with the Eighth Amendment. <u>See</u> <u>Roberts</u>, 709 S.W.2d at 860-61.

Last, Roberts contends the district court should have granted him leave to file his third amended habeas petition. Roberts did not add any new claims, but merely clarified existing ones with more discussion and citations. Thus, we see no error in the district court's refusal.

Having carefully considered all of Roberts's claims, we affirm the district court's denial of Roberts's petition for a writ of habeas corpus.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-