# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1983

_____

Steven Wesley Parkus,                           *
                                                *
                    Appellant,                   *
                                                *     Appeal from the United States
        v.                                      *     District Court for the
                                                *     Eastern District of Missouri.
Michael Bowersox,                               *
                                                *
                    Appellee.                    *

_____

Submitted:  April 17, 1998

Filed:  October 5, 1998

_____

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

        Steven W. Parkus, a Missouri inmate sentenced to death, appeals from the
district court's[1] denial of his petition for a writ of habeas corpus filed pursuant to 28
U.S.C. § 2254.  We affirm.

_____

        [1]The Honorable Donald J. Stohr, United States District Judge for the Eastern
District of Missouri.

## I.

Parkus was found guilty of first degree murder for the strangulation death of Mark Steffenhagen. The details of the crime were set forth by the Missouri Supreme Court in its opinion affirming the conviction and sentence on direct appeal. See State v. Parkus, 753 S.W.2d 881 (Mo.) (en banc), cert. denied, 488 U.S. 900 (1988), and we summarize them here.

On November 24, 1985, Parkus and Steffenhagen were inmates in the Missouri State Penitentiary, where they were confined in Housing Unit 2-B, a unit for prisoners who were considered in need of protective custody. Parkus was housed in the unit because his small physical stature made him a target for sexual abuse by other inmates. Steffenhagen, who was also slight of stature, was likewise housed in the unit for protection from abuse. That evening, Parkus entered Steffenhagen's cell. Using strips of bedding, Parkus restrained Steffenhagen and then, possibly while engaging in anal intercourse, strangled him. Steffenhagen's autopsy revealed facial cuts and abrasions suggesting that he had been hit with a blunt object such as a fist. Additionally, bruising on his extremities indicated that he had struggled against his restraint, while bruises on his neck and internal damage to his larynx revealed that strangulation was the cause of his death.

Parkus was represented at trial by Donald Catlett. Although having never before represented a defendant in a capital case, Catlett was an experienced public defender who had represented several defendants with mental problems. Shortly after he was appointed, Catlett determined that Parkus's mental capacity would be a key to his defense in light of the fact that Parkus had spent most of his life in Missouri penal and mental institutions. Catlett then started to investigate Parkus's long psychological history by attempting to track down records from numerous facilities within several Missouri state agencies and private entities. The typical response he received was that the records had either been destroyed or were not kept.

Catlett also sought mental health records from Malcolm Bliss Hospital and was told that that facility had no records of Parkus's ever having been a patient there. The record is unclear whether Catlett was aware that Parkus had spent a considerable period of his youth in mental treatment at St. Louis State Hospital, a different facility. Catlett's testimony suggests, however, that he contacted Malcolm Bliss under the mistaken assumption that St. Louis State Hospital and Malcolm Bliss were the same facility.

At trial, much of Parkus's defense centered on the theory that he lacked the ability to deliberate upon the crime, an essential mental element required for first degree murder under Missouri law.[2] Although he did not himself testify, Parkus called as a witness his brother Chester, also a state prisoner, who testified that Parkus had been physically and sexually abused by their parents and by an uncle. He also testified that Parkus was the frequent victim of sexual abuse during his incarceration.

Two psychiatrists testified regarding Parkus's mental condition. Dr. Mahindra Jayaratna, the state's expert, testified that Parkus did not have a mental disease or defect and that he was able to conform his behavior to the requirements of law, including the ability to deliberate. Dr. A.E. Daniel, who was called by Parkus, although agreeing with Jayaratna that Parkus suffered from no mental disease or defect, opined that Parkus suffered from a diminished mental capacity that prevented him from deliberating upon the murder.[3]

---

[2]"A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1.

[3]Under Missouri law, a mental disease or defect provides a complete defense if, as a result, "[the defendant] did not know or appreciate the nature, quality, or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law." Mo. Rev. Stat. § 552.030(1). Because both experts in Parkus's trial concluded that he was not mentally incapacitated under section 552.030(1), his

The jury rejected Parkus's diminished mental capacity defense and convicted him of first degree murder. During the penalty phase of trial, Parkus presented additional testimony regarding his mental capacity, including that of two inmates, who related that Parkus had been sexually abused in prison and that he had become more violent as he tried to survive. Dr. Daniel reiterated his prior testimony and further testified that Parkus had a low IQ and was borderline mentally retarded. Dr. Jayaratna reiterated his conclusion that Parkus had the ability to deliberate before the killing. After finding that Parkus's prior convictions for assault and rape, his incarceration at the time of the murder, and the victim's inmate status were aggravating circumstances, the jury sentenced him to death.

As indicated earlier, the Missouri Supreme Court affirmed Parkus's conviction on direct appeal. It later affirmed the denial of Parkus's petition for post-conviction relief under Mo. S. Ct. R. 29.15. See Parkus v. State, 781 S.W.2d 545 (Mo. 1989) (en banc), cert. denied, 495 U.S. 940 (1990). Parkus then simultaneously filed for both federal habeas relief under 28 U.S.C. § 2254 and state habeas relief under Mo. S. Ct. R. 91. The Missouri Supreme Court, in a summary order, denied Parkus's petition for state habeas relief. The district court, after denying Parkus an evidentiary hearing on his federal habeas petition, denied the petition, finding that Parkus's claims were either procedurally barred or without merit. Contending, *inter alia*, that he was entitled to an evidentiary hearing, Parkus appealed the district court's decision to this court. We reversed and remanded the cause for an evidentiary hearing and a ruling on Parkus's ineffective assistance of counsel and prosecutorial misconduct claims. See Parkus v. Delo, 33 F.3d 933, 942 (8th Cir. 1994).

On remand, the district court held an evidentiary hearing and again denied the petition. Parkus sought to appeal. Pursuant to 28 U.S.C. § 2253(c)(3), we granted him

counsel's strategy at trial was to prove the partial defense that his mental capacity was diminished to the extent that he was unable to deliberate upon the murder.

a certificate of appealability on the issue of whether his trial counsel had rendered ineffective assistance by failing to obtain his medical records from St. Louis State Hospital.[4]

## II.

Parkus contends he was denied effective assistance of counsel during both the guilt and penalty phases of his trial. This claim, which presents mixed questions of law and fact, is reviewed de novo. See Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996), cert. denied, 117 S.Ct. 2421 (1997). The district court's factual findings, however, are reviewed for clear error. See Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988) (en banc).

The governing standard for Parkus's ineffective assistance of counsel claim is clearly established:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984); Six v. Delo, 94 F.3d 469, 473 (8th Cir. 1996), cert. denied, Six v. Bowersox, 117 S. Ct. 2418 (1997); Sidebottom v.

---

[4]Parkus also sought a certificate of appealability with respect to his claim of prosecutorial misconduct. We denied his subsequent petition for rehearing and application for a certificate of probable cause on the issue. Nevertheless, Parkus has included arguments in his brief concerning our jurisdiction to consider his prosecutorial misconduct claims as well as a substantive argument on the issue. We address these arguments in Part III of this opinion.

Delo, 46 F.3d 744, 752 (8th Cir. 1995).  To prevail, Parkus must satisfy both prongs of the Strickland test.  See 466 U.S. at 687.  We need not address both components of the Strickland inquiry if the defendant makes an insufficient showing on one.  See id. at 697.

Our consideration of Parkus's claim of ineffective assistance of counsel is guided by the principle that "[j]udicial scrutiny of counsel's performance must be highly deferential."  Strickland, 466 U.S. at 689.  This deferential standard of review arises from the presumption that an attorney's performance is reasonable:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see Fretwell v. Norris, 133 F.3d 621, 624 (8th Cir. 1998).

Parkus asserts that it was unreasonable for Catlett to seek his treatment records at Malcolm Bliss Hospital and thereafter fail to further investigate whether St. Louis State Hospital was a different facility.  In support of this contention, he contends that both Dr. Jayaratna and Dr. Daniels, each having now had the opportunity to review Parkus's treatment records from St. Louis State Hospital, have changed their opinions regarding Parkus's mental state at the time of the murder.  Parkus maintains that the gravity of the error resulting from his counsel's alleged lack of diligence is irrefutable evidence of an inadequate investigation.

This argument is inconsistent with Strickland. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Accordingly, our assessment of Catlett's performance must be undertaken in such a way as to "reconstruct the circumstances of [his] challenged conduct, and to evaluate the conduct from [his] perspective at the time." Id. at 689; see also Fretwell, 133 F.3d at 624 (quoting Strickland, 466 U.S. at 689); Six, 94 F.3d at 474; O'Neal v. Delo, 44 F.3d 655, 660 (8th Cir. 1995).

When considered in this context, Catlett's failure to obtain the St. Louis State Hospital records cannot be said to have fallen below the Strickland standard of reasonableness. This is not a case in which counsel performed little or no investigation of mitigating circumstances. See Fretwell, 133 F.3d at 627 (citing Pickens v. Lockhart, 714 F.2d 1455, 1467 (8th Cir. 1983)); Wilkins v. Iowa, 957 F.2d 537, 541 (8th Cir. 1992) (citing Thomas v. Lockhart, 738 F.2d 304 (8th Cir. 1984) (deficient investigation where counsel did nothing beyond reading police file)); Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991) (citing Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (en banc); Thomas, 738 F.2d at 308; and Pickens, 714 F.2d at 1467). With the help of his staff, Catlett conducted a thorough search for records of Parkus's mental health history. He contacted numerous state agencies, as well as the individual institutions at which he believed Parkus had been placed during the course of his life.

Parkus's citation to Hill v. Lockhart, 28 F.3d 832 (8th Cir. 1994), is unpersuasive. In Hill, we held that a defendant had received ineffective assistance of counsel by reason of his attorney's failure to present evidence of the defendant's psychiatric history, including the schizophrenic tendencies that resulted from his failure to take his anti-psychotic drugs. See id. at 845. In that case, unlike here, counsel had made no attempt to obtain crucial treatment records that documented the defendant's history of hallucinations and his positive response to anti-psychotic drugs. See id.

Likewise, we do not agree that <u>Baxter v. Thomas</u>, 45 F.3d 1501 (11th Cir. 1995), presents a situation comparable to Parkus's. In <u>Baxter</u>, counsel, who were under the impression that the defendant had spent much of his youth in juvenile institutions, failed to obtain records from a mental hospital where the defendant had spent three years of his teenage life. Indeed, counsel, who were aware that a mental hospital was located in the same city as the juvenile institution and who had observed strong indications that Baxter had psychiatric problems, "failed to take any steps to uncover mental health mitigating evidence that was readily available." <u>Id.</u> at 1514; <u>see also</u> <u>Bloom v. Calderon</u>, 132 F.3d 1267, 1271 (9th Cir. 1997), <u>cert. denied</u>, 118 S.Ct. 1856 (1998) (ineffective assistance when trial counsel did "virtually nothing" to obtain psychiatrist witness until a few days before trial and then did "practically nothing" to prepare the witness).

Our conclusion that Parkus has failed to demonstrate a deficiency in his counsel's performance makes it unnecessary to inquire into his claim of prejudice. <u>See</u> <u>Walls v. Bowersox</u>, 151 F.3d 827, 835 (8th Cir. 1998). Accordingly, we affirm the district court's denial of relief on Parkus's ineffectiveness of counsel claim.

## III.

As noted above, we limited our certificate of appealability to Parkus's ineffective assistance of counsel claim. Parkus contends that his appeal is not limited by the certificate of appealability because the district court granted him an unlimited certificate of probable cause on December 29, 1992, well before the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

Pre-AEDPA, section 2253 required a state prisoner to obtain a certificate of probable cause before appealing from the denial of a federal habeas petition. <u>See</u> <u>Ramsey v. Bowersox</u>, 149 F.3d 749, 759 (8th Cir. 1998). The AEDPA amended section 2253 by replacing the certificate of probable cause with a certificate of

appealability.  <u>See</u> <u>id.</u>  Although the ground for issuing a certificate of appealability is the same as that which justified issuing a certificate of probable cause, a certificate of appealability is more limited in scope than was the latter.  <u>See</u> <u>Roberts v. Bowersox</u>, 137 F.3d 1062, 1068 (8th Cir. 1998).  "'[A] certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard.'"  <u>Id.</u> (quoting <u>Herrera v. United States</u>, 96 F.3d 1010, 1012 (7th Cir. 1996)).

The AEDPA's provisions regarding certificates of appealability apply to those habeas cases which were filed prior to the effective date of the Act.  <u>See</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 520-21 (8th Cir. 1997). As we did in <u>Roberts</u>, however, we will give Parkus the benefit of the doubt and consider the merits of his claim that the prosecution improperly withheld exculpatory information in his prison file from his attorney in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  To establish a <u>Brady</u> violation, Parkus must demonstrate that the government suppressed evidence, that the evidence was exculpatory, and that the evidence was material either to guilt or punishment.  <u>See</u> <u>United States v. Duke</u>, 50 F.3d 571, 577 (8th Cir. 1995).  The district court concluded that Parkus failed to meet the suppression requirement of <u>Brady</u>.  Specifically, the court found that the prosecutor gave Catlett full pretrial access to the state's files, including Parkus's prison files, a finding that is corroborated by the prosecution's pretrial written response to Parkus's request for disclosure.  We review this factual finding for clear error.  <u>See</u> <u>Wilkins v. Bowersox</u>, 145 F.3d 1006, 1011 (8th Cir. 1998); <u>United States v. Harvey</u>, 900 F.2d 1253, 1259 (8th Cir. 1990); <u>Laws</u>, 863 F.2d at 1381.  We conclude that the district court's finding is supported by the record.  Having failed to establish that the prosecution suppressed the prison records, the allegation that formed

the basis of our finding of cause to excuse his procedural default, <u>see</u> <u>Parkus v. Delo</u>, 33 F.3d at 940, Parkus is now barred from arguing that he was prejudiced by his counsel's failure to utilize the information that was available to him, a claim that should have been raised in the state courts.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.